**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Stericycle, Inc. Securities Litigation* | Civ. A. No. 1:16-cv-07145<br>Hon. Andrea R. Wood<br><br>CLASS ACTION<br><br>**ECF CASE** |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES**

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, IL 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
Email: Avi@blbglaw.com

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

John C. Browne (admitted *pro hac vice*)
Adam H. Wierzbowski (admitted *pro hac vice*)
Julia K. Tebor (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Email: JohnB@blbglaw.com
Email: Adam@blbglaw.com
Email: Julia.Tebor@blbglaw.com

*Lead Counsel for Lead Plaintiffs the Public Employees' Retirement System of Mississippi
and the Arkansas Teacher Retirement System*

## <u>TABLE OF CONTENTS</u>

**Page**

I.  PRELIMINARY STATEMENT ..................................................................................1

II. ARGUMENT .........................................................................................................5

    A.  Lead Counsel's Fee Application Should be Approved ...........................................5

        1.  Counsel Are Entitled to Attorneys' Fees from the Common Fund ............5

        2.  The Requested Fee Is Fair and Reasonable as a Percentage of the
             Fund ...........................................................................................6

        3.  The Requested Fee Award Is Reasonable Under the Lodestar
             Method ......................................................................................10

        4.  The Contingent Nature of the Litigation and the Risk of
             Nonpayment Supports the Fee Request .....................................................11

        5.  The Quality of Legal Services Rendered Supports the Fee Request .........16

        6.  The Approval of Lead Plaintiffs and the Reaction of the Settlement
             Class to Date Support the Requested Fee ...................................................17

    B.  The Request for Reimbursement of Litigation Expenses Should Be
        Approved.........................................................................................................17

III. CONCLUSION..................................................................................................20

## TABLE OF AUTHORITIES

CASES                                                                                                Page(s)

*Abbott v. Lockheed Martin Corp.*,
    2015 WL 4398475 (S.D. Ill. July 17, 2015) ...........................................................18

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
    2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ........................................................16

*Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*,
    743 F.3d 243 (7th Cir. 2014) ...............................................................................7, 10

*Arenson v. Bd. of Trade of Chicago*,
    372 F. Supp. 1349 (N.D. Ill. 1974) ..........................................................................16

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    792 F. Supp. 2d 1028 (N.D. Ill. 2011) ................................................................15, 20

*Beane v. Bank of N.Y. Mellon*,
    2009 U.S. Dist. LEXIS 27504 (S.D.N.Y. Mar. 31, 2009) .......................................18

*Beesley v. Int'l Paper Co.*,
    2014 WL 375432 (S.D. Ill. Jan. 31, 2014).................................................................9

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)...................................................................................................5

*Cen. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
    504 F.3d 229 (2d Cir. 2007)......................................................................................10

*Cent. Laborers' Pension Fund v. SIRVA, Inc.*,
    2007 U.S. Dist. LEXIS 105097 (N.D. Ill. Oct. 31, 2007).........................................9

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).....................................................................................12

*City of Greenville v. Syngenta Crop Protection, Inc.*,
    904 F. Supp. 2d 902 (S.D. Ill. 2012).........................................................................9

*City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira*,
    No. 11-cv-08332-AJS, slip. op. (N.D. Ill. Aug. 5, 2014), ECF No. 207 ..................9

*In re Continental Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...............................................................................7, 12

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    2015 WL 753946 (N.D. Ill. February 20, 2015)....................................................7, 8

*Dalton v. Jones, Bird & Howell*,
    1993 U.S. App. LEXIS 11377 (7th Cir. May 13, 1993) ...................................................18

*Duncan v. Joy Global Inc., et al.*,
    No. 16-cv-1229-pp, slip op. (E.D. Wis. Dec. 27, 2018), ECF No. 79 ....................................19

*In re Facebook, Inc. IPO Sec. and Derivative Litig.*,
    MDL No. 12-2389 (RWS), slip op. (S.D.N.Y. Nov. 28, 2018), ECF No. 604.........................9

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...............................................................6

*Florin v. Nationsbank of Ga., N.A. ("Florin I")*,
    34 F.3d 560 (7th Cir. 1994) ...............................................................................6, 7

*Florin v. Nationsbank of Ga., N.A. ("Florin II")*,
    60 F.3d 1245 (7th Cir. 1995) ...............................................................................15

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) .................................................................................7

*Gastineau v. Wright*,
    592 F.3d 747 (7th Cir. 2010) ...............................................................................10

*In re Gilat Satellite Networks, Ltd.*,
    2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ..........................................................20

*Goldsmith v. Tech. Solutions Co.*,
    1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 11, 1995)...............................................8

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
    212 F.R.D. 400 (E.D. Wis. 2002) ...........................................................................15

*In re Groupon, Inc. Sec. Litig.*,
    2016 WL 3896839 (N.D. Ill. July 13, 2016)...............................................................8

*Halverson v. Convenient Food Mart, Inc.*,
    458 F.2d 927 (7th Cir. 1972) .................................................................................6

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ...........................................................................10, 11

*Heder v. City of Two Rivers*,
    255 F. Supp. 2d 947 (E.D. Wis. 2003)......................................................................11

*Heekin v. Anthem, Inc.*,
    2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) .............................................................9

*Hicks v. Morgan Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................................6

*In re Household Int'l, Inc. ERISA Litig.*,
2004 WL 7329846 (N.D. Ill. Nov. 22, 2004) ......................................................11

*In re ITT Educ. Servs., Inc. Sec. Litig. (Indiana)*,
2016 WL 1162534 (S.D. Ind. Mar. 24, 2016) ......................................................19

*Kaplan v. Houlihan Smith & Co.*,
2014 U.S. Dist. LEXIS 83936 (N.D. Ill. June 20, 2014) ......................................18

*In re Marsh & McLennan, Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................................17

*McKittrick v. Gardner*,
378 F.2d 872 (4th Cir. 1967) ..............................................................................12

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) .............................................................................................18

*Missouri v. Jenkins*,
491 U.S. 274 (1989) .............................................................................................11

*Pension Plan v. Baxter Int'l Inc.*,
2016 WL 10571629 (N.D. Ill. Jan. 22, 2016) ........................................................8

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
No. 09 C 7666, slip op. (N.D. Ill. Jan. 22, 2014), ECF No. 693 .............................9

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
2016 WL 8290089 (W.D. Tenn. Aug. 2, 2016) ......................................................9

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 10, 2001) ........................................8

*Roth v. AON Corp.*,
No. 04-C-6835, slip op. (N.D. Ill. Nov. 18, 2009), ECF No. 220 ...........................9

*San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.*,
No. 1:15-cv-1140-LPS, slip op. (D. Del. July 18, 2017), ECF No. 100 ..................9

*Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*,
574 F.3d 852 (7th Cir. 2009) ..............................................................................10

*Silverman v. Motorola Solutions, Inc.*,
739 F.3d 956 (7th Cir. 2013) ................................................................................9

*Smith v. Vill. of Maywood,*
    17 F.3d 219 (7th Cir. 1994) ........................................................................11

*Standard Iron Works v. ArcelorMittal,*
    2014 WL 7781572 (N.D. Ill. Oct. 22, 2014)..............................................9

*Swift v. Direct Buy, Inc.,*
    2013 U.S. Dist. LEXIS 152618 (N.D. Ind. Oct. 24, 2013).......................8

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir. 2001) ........................................................... *passim*

*Taubenfeld v. AON Corp.,*
    415 F.3d 597 (7th Cir. 2005) ...........................................................7, 8, 16

*Tellabs, Inc. v. Makor Issues & Rights Ltd.,*
    551 U.S. 308 (2007)......................................................................................6

*In re Trans Union Corp. Privacy Litig.,*
    2009 U.S. Dist. LEXIS 116934 (N.D. Ill. Dec. 9, 2009).......................7, 10

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.,*
    2019 WL 2077847 (N.D. Cal. May 10, 2019) ...........................................9

*Williams v. Rohm & Haas Pension Plan,*
    2010 WL 4723725 (S.D. Ind. Nov. 12, 2010) .......................................11

*Wong v. Accretive Health, Inc.,*
    2014 WL 7717579 (N.D. Ill. Apr. 30, 2014) ..........................................11

*In re Xerox Corp. ERISA Litig.,*
    No. 02-CV-1138 (AWT), slip op. (D. Conn. Apr. 14, 2009), ECF No. 354 ............................9

**STATUTES**

15 U.S.C. § 78u-4(a)(4) ......................................................................................19

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, Lead Counsel for the Court-appointed Lead Plaintiffs, the Public Employees' Retirement System of Mississippi ("Miss. PERS") and the Arkansas Teacher Retirement System ("ATRS"), and the Settlement Class, respectfully submits this memorandum in support of its motion, on behalf of Plaintiffs' Counsel, for (i) an award of attorneys' fees in the amount of 25% of the Settlement Fund; (ii) reimbursement of $192,433.77 for Plaintiffs' Counsel's Litigation Expenses that were reasonably and necessarily incurred in prosecuting and resolving the Action; and (iii) reimbursement of $21,618.75 to Miss. PERS and $873.36 to ATRS for their costs and expenses directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## I. PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, will resolve this Action in its entirety in exchange for a $45 million cash payment. The proposed Settlement represents an excellent result for the Settlement Class. It provides meaningful and immediate compensation while avoiding the risks and delay of continued litigation, including the risks posed by Stericycle's current financial condition and available cash.

The $45 million payment exceeds available insurance and was achieved in the face of numerous challenges. To begin with, there were significant obstacles to establishing Defendants' liability in this case. Defendants raised serious arguments on their pending motions to dismiss and

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement dated February 14, 2019 (ECF No. 108-1) (the "Stipulation") or the Declaration of John C. Browne in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Browne Declaration" or "Browne Decl."). Citations to "¶ __" in this memorandum refer to paragraphs in the Browne Declaration and citations to "Ex. __" refer to exhibits to the Browne Declaration.

if those arguments were accepted in all or in part it would have dramatically reduced, or eliminated altogether, the Settlement Class's potential recovery. As noted in paragraphs 74-76 of the Browne Declaration,[2] Defendants had particularly coherent arguments that the case should be dismissed at the pleading stage due to the purported expiration of the statute of limitations.

Even if Lead Plaintiffs had succeeded at the motion to dismiss stage, there is no guarantee that they could ultimately prove Defendants' liability after additional dispositive motions, trial, and any appeals that would follow. These arguments would have focused on falsity and scienter, *see* Browne Decl. at ¶¶ 77-82, and would have been highly fact-intensive. Defendants would hold Lead Plaintiffs to their burden of proof on these issues, and there is no guarantee that Lead Plaintiffs would be able to prevail on these issues at summary judgment, trial, or on appeal.

Lead Plaintiffs also faced substantial risk in establishing loss causation and damages. Defendants argued with some force that many of the price declines on Lead Plaintiffs' alleged corrective disclosure dates were not due to the revelation of any fraud. *See* Browne Decl. ¶¶ 83-84. Through these and other arguments, Defendants would have posed challenges to Lead Plaintiffs' ability to recover damages even if Lead Plaintiffs were successful in establishing liability.

Finally, the proposed Settlement exceeds available insurance proceeds. This is a considerable achievement given the financial condition of Stericycle at the time the Settlement was reached. For example, Stericycle's stock was trading at approximately $45 per share at the time, which was a substantial decline from the $70 per share the stock had been trading at in August

---

[2] The Browne Declaration is an integral part of this submission and the Court is respectfully referred to it for a detailed description of, *inter alia*: the claims asserted (¶¶ 21-23); the history of the Action (¶¶ 23-53); the Settlement negotiations (¶¶ 54-59); the risks of continued litigation (¶¶ 6-11, 66-92); and a summary of the services Plaintiffs' Counsel provided to the Settlement Class (¶¶ 12-15).

2018. The Company was also engaged in a "business transformation" initiative that had resulted in significant layoffs and restructurings. Even more to the point, at the time the Settlement was reached, Stericycle was reporting that it had only $52 million in free cash available (its latest Form 10-Q reports $48.2 million in available cash). ¶¶ 85-86.

In order to achieve this recovery, Lead Counsel made significant efforts and litigated aggressively on a fully contingent basis, against one of the largest and most widely-respected defense firms in the world, without any guarantee of payment. As detailed in the accompanying Browne Declaration, Lead Counsel vigorously pursued this litigation from its outset by, among other things, (i) conducting a comprehensive investigation of the alleged fraud, which included a thorough review of the voluminous public record; (ii) researching, drafting, and filing the Class Action Complaint ("CAC") and the Consolidated Securities Class Action Complaint (the "Amended CAC" or "Complaint"); (iii) conducting extensive research and drafting briefing in opposition to Defendants' two rounds of motions to dismiss; (iv) consulting with experts and consultants regarding loss-causation and damages issues; and (v) conducting extensive, arm's length settlement negotiations, which included a formal full-day mediation session overseen by an experienced mediator, followed by additional negotiations under the supervision and guidance of the mediator. ¶¶ 12-15, 30-59.

Prior to execution of the Stipulation, Lead Counsel also conducted substantial due diligence discovery to confirm the fairness, reasonableness, and adequacy of the Settlement, which included the review of confidential deposition transcripts of Stericycle executives (and related exhibits) from the related Customer Case and additional internal Company documents, including Board of Director Meeting minutes and presentations, Compensation Committee meeting minutes, Audit Committee meeting minutes, Corporate Update presentations, Director and Officer stock

ownership information, compensation plans, incentive stock plans, stock option grant information, equity grant information, officer bonus measurement calculations, income statements, and budgets. ¶¶ 60-63.

As compensation for Plaintiffs' Counsel's considerable efforts on behalf of the Settlement Class and the risks of nonpayment they faced in bringing and prosecuting the Action on a contingent basis, Lead Counsel seeks attorneys' fees in the amount of 25% of the Settlement Fund. The requested fee is well within the range of fees that courts in this Circuit have awarded in securities class actions with comparable recoveries on a percentage basis. The requested fee also represents a multiplier of 2.84 on Plaintiffs' Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with significant contingency risks such as this one. In addition, the expenses for which Lead Counsel seeks reimbursement were reasonable and necessary for the successful prosecution of the Action.

Moreover, the requested fee has the full support of the two Lead Plaintiffs, Miss. PERS and ATRS. *See* Declaration of Donald L. Kilgore submitted by Miss. PERS (the "Kilgore Decl.") (Ex. 2), at ¶ 8; Declaration of Rod Graves submitted by ATRS (the "Graves Decl.") (Ex. 3), at ¶ 9. Lead Plaintiffs are sophisticated institutional investors that actively supervised the Action and have endorsed the requested fee as fair and reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation. Kilgore Decl. ¶¶ 5-6, 8; Graves Decl. ¶¶ 6-7, 9.

In addition, in accordance with the Preliminary Approval Order, 304,811 copies of the Notice have been mailed to potential Settlement Class Members and their nominees through June 14, 2019, and the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire*. *See* Declaration of Luiggy Segura submitted by the Court-approved Claims

Administrator, JND (Ex. 4) (the "Segura Decl."), at ¶¶ 2-8. The Notice advised potential Settlement Class Members that Lead Counsel would apply for an award of attorney's fees in an amount not to exceed 25% of the Settlement Fund and for reimbursement of Litigation Expenses (including the reasonable costs and expenses of Lead Plaintiffs) in an amount not to exceed $350,000. *See Id.* Ex. A at ¶¶ 5, 76. The fees and expenses sought by Lead Counsel are within the amounts set forth in the Notice. While the deadline set by the Court for Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the requests for fees and expenses have been received. ¶¶ 98, 125, 136.[3]

In light of the excellent recovery obtained, the time and effort devoted by Plaintiffs' Counsel to the Action, the skill and expertise required, the quality of the work performed, the wholly contingent nature of the representation, and the considerable risks that counsel undertook, Lead Counsel respectfully submits that the requested fee award is reasonable and should be approved by the Court. In addition, the costs and expenses incurred by Plaintiffs' Counsel and Lead Plaintiffs are reasonable in amount and were necessarily incurred in the successful prosecution of the Action, and they too should be approved.

## II. ARGUMENT

### A. Lead Counsel's Fee Application Should be Approved

#### 1. Counsel Are Entitled to Attorneys' Fees from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Similarly,

---

[3] The deadline for the submission of objections is July 1, 2019. Should any objections be received, Lead Counsel will address them in its reply papers, which Lead Counsel will file with the Court on or before July 15, 2019.

the Seventh Circuit has held that "[w]hen a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund." *Florin v. Nationsbank of Ga., N.A. ("Florin I")*, 34 F.3d 560, 563 (7th Cir. 1994). Courts recognize that awarding attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010) (internal quotations and citation omitted); *see also Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 931 n.5 (7th Cir. 1972) ("Substantial counsel fees may even be an acceptable incentive to encourage forceful prosecution of cases….").

The Supreme Court has emphasized that private securities actions, such as this one, are "an indispensable tool with which defrauded investors can recover their losses—a matter crucial to the integrity of domestic capital markets," *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 320 n.4 (2007) (internal quotations and citation omitted), and are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Id.* 551 U.S. at 313. Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

**2.    The Requested Fee Is Fair and Reasonable as a Percentage of the Fund**

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained. Although courts within this Circuit in "common fund cases have

discretion to choose either the lodestar or percentage method of calculating fees,"[4] the Seventh Circuit has strongly endorsed the percentage method, pursuant to which fees are awarded as a percentage of the common fund, because it most closely approximates the manner in which attorneys are compensated in the marketplace for contingent work. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis"); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 753946, at *3 (N.D. Ill. February 20, 2015) (finding that the percentage method has "emerged as the favored method for calculating fees in common-fund cases in this district"). The Seventh Circuit also has recognized "that there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin I*, 34 F.3d at 566; *In re Trans Union*, 2009 U.S. Dist. LEXIS 116934, at *13 (same); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to award a percentage "than it would be to hassle over every item or category of hours and expense and what multiple to fix and so forth").

The Court of Appeals for the Seventh Circuit has "held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). In applying this standard in *Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005), the Seventh Circuit

---

[4] *In re Trans Union Corp. Privacy Litig.*, 2009 U.S. Dist. LEXIS 116934, at *13 (N.D. Ill. Dec. 9, 2009); *see also Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) ("in our circuit, it is legally correct for a district court to choose either" the percentage method or the lodestar method in determining fee awards); *see also Florin I*, 34 F.3d at 566 ("both the lodestar approach and the percentage approach may be appropriate in determining attorney's fee awards, depending on the circumstances").

7

considered, among other things, the following factors: (1) "awards made by courts in other class actions"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case." *Id*. at 600; *see also Synthroid*, 264 F.3d at 721 (reasonableness determination "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case"). These factors strongly support the fee requested here.

"[A]ttorneys' fees from analogous class action settlements are indicative of a rational relationship between the record . . . and the fees awarded by the district court." *Taubenfeld*, 415 F.3d at 600. In complex class action cases like this one, courts within the Seventh Circuit have held that percentages in the range of 33 1/3% to 40% of the recovery are appropriate. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 U.S. Dist. LEXIS 20397, at *10 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."); *Goldsmith v. Tech. Solutions Co.*, 1995 U.S. Dist. LEXIS 15093, at *27 (N.D. Ill. Oct. 11, 1995) ("courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery."); *Swift v. Direct Buy, Inc.*, 2013 U.S. Dist. LEXIS 152618, at *30 (N.D. Ind. Oct. 24, 2013); ("[P]ayment of 33% of the common fund is widely accepted by the Seventh Circuit as a reasonable fee in a class action.").

Accordingly, the 25% fee requested here is plainly consistent with—if not below—fee awards that courts in the Seventh Circuit have made in similar cases with comparable recoveries. *See*, *e.g.*, *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *4 (N.D. Ill. July 13, 2016) (awarding 30% of $45 million settlement fund); *City of Lakeland Emps.' Pension Plan v. Baxter Int'l Inc.*, 2016 WL 10571629, at *1 (N.D. Ill. Jan. 22, 2016) (awarding 26% of $42.5 million settlement fund); *In re Dairy Farmers of America*, 2015 WL 753946, at *16 (awarding 33% of

$46 million common fund); *City of Sterling Heights Gen. Emps. Ret. Sys. v. Hospira*, No. 11-cv-08332-AJS, slip. op. at 1-2 (N.D. Ill. Aug. 5, 2014), ECF No. 207 (awarding 30% of $60 million settlement fund) (Ex. 7); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *1, *4 (S.D. Ill. Jan. 31, 2014) (awarding one-third of $30 million class recovery); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, slip op. at 2 (N.D. Ill. Jan. 22, 2014), ECF No. 693 (awarding 33 1/3% of $64 million settlement fund) (Ex. 8); *Roth v. AON Corp.*, No. 04-C-6835, slip op. at 1 (N.D. Ill. Nov. 18, 2009), ECF No. 220 (awarding 31% of $30 million settlement fund) (Ex. 9); *Cent. Laborers' Pension Fund v. SIRVA, Inc.*, 2007 U.S. Dist. LEXIS 105097, at *18-19 (N.D. Ill. Oct. 31, 2007) (awarding 29.85% of $53.3 million settlement).[5]

The requested fee is also consistent with fee awards in similarly sized securities class actions in other circuits. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *In re Facebook, Inc. IPO Sec. and Derivative Litig.*, MDL No. 12-2389 (RWS), slip op. at 2-3 (S.D.N.Y. Nov. 28, 2018), ECF No. 604 (awarding 25% of $35 million settlement) (Ex. 10); *San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.*, No. 1:15-cv-1140-LPS, slip op. at 2 (D. Del. July 18, 2017), ECF No. 100 (awarding 25% of $74 million settlement) (Ex. 11); *In re Regions Morgan Keegan Closed-End Fund Litig.*, 2016 WL 8290089, at 11 (W.D. Tenn. Aug. 2, 2016) (awarding 30% of $62 million settlement); *In re Xerox Corp.*

---

[5] Indeed, courts within the Seventh Circuit have awarded percentage fees higher than the amount requested here in cases with much larger settlements. *See, e.g., Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 959 (7th Cir. 2013) (holding that fee award of 27.5% of a $200 million settlement was not excessive); *Standard Iron Works v. ArcelorMittal*, 2014 WL 7781572, at *1, *3 (N.D. Ill. Oct. 22, 2014) (awarding 33% of $163.9 million total common fund, finding the amount "a fair and reasonable attorneys' fee"); *City of Greenville v. Syngenta Crop Protection, Inc.*, 904 F. Supp. 2d 902, 908-09 (S.D. Ill. 2012) (awarding one-third of $105 million common fund); *Heekin v. Anthem, Inc.*, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (awarding 33.3% of $90 million common fund).

*ERISA Litig.*, No. 02-CV-1138 (AWT), slip op. at 3 (D. Conn. Apr. 14, 2009), ECF No. 354 (awarding 29.9% of $51 million settlement) (Ex. 12); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 249 (2d Cir. 2007) (affirming district court's award of 30% of $42.5 million settlement fund).

In sum, the fee requested here is well within the range of fees awarded on a percentage basis in comparable cases.

### 3. The Requested Fee Award Is Reasonable Under the Lodestar Method

Using the lodestar/multiplier method as a cross-check confirms the appropriateness of the requested fees. *See, e.g.*, *In re Trans Union*, 2009 U.S. Dist. LEXIS 116934, at *6. The lodestar/multiplier method entails multiplying the number of hours each attorney or other professional expended on the case by his or her hourly rate to derive the lodestar figure. *See Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010); *Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*, 574 F.3d 852, 856-57 (7th Cir. 2009). Courts then typically adjust the lodestar, by applying a multiplier, to take into account the various factors in the litigation that affect the reasonableness of the requested fees, including "the complexity of the legal issues involved, the degree of success obtained, and the public interest advance by the litigation." *Gastineau*, 592 F.3d at 748 (citing *Schlacher*, 574 F.3d at 856-57). Courts must also consider the risk taken by class counsel that they will recover nothing for their time and expenses. *See Americana Art China Co.*, 743 F.3d at 248. In complex contingent litigation such as the instant action, courts in the Seventh Circuit regularly apply risk multipliers between 1.0 and 4.0. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969 (7th Cir. 1991) (noting that multipliers between 1.0 and 4.0 have been approved).

As detailed here and in the Browne Declaration, Plaintiffs' Counsel spent 7,853.55 hours of attorney and other professional time prosecuting the Action for the benefit of the Settlement Class through June 14, 2019. ¶ 114. Plaintiffs' Counsel's lodestar, derived by multiplying the hours

spent on the litigation by each attorney or other professional by his or her current hourly rate,[6] is $3,960,015.00. Accordingly, the requested fee of 25% of the Settlement Fund, which equates to $11.25 million (before interest), represents a multiplier of approximately 2.84 on Plaintiffs' Counsel's lodestar.[7] *Id.*

The requested 2.84 multiplier is well within the range of multipliers commonly awarded in securities class actions and other comparable litigation. *See, e.g.*, *Wong v. Accretive Health, Inc.*, 2014 WL 7717579, at *1 (N.D. Ill. Apr. 30, 2014) (awarding multiplier of approximately 4.7) (Ex. 13); *Williams v. Rohm & Haas Pension Plan*, 2010 WL 4723725 (S.D. Ind. Nov. 12, 2010), *aff'd*, 658 F.3d 629 (7th Cir. 2011) (awarding $43.5 million fee on lodestar of $7.43 million, for multiplier of 5.85) (Ex. 14); *In re Household Int'l, Inc. ERISA Litig.*, 2004 WL 7329846, at *1 (N.D. Ill. Nov. 22, 2004) (awarding multiplier of approximately 4.65) (Ex. 15).

In sum, Lead Counsel's requested fee award is well within the range of what courts in this Circuit commonly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar.

### 4. The Contingent Nature of the Litigation and the Risk of Nonpayment Supports the Fee Request

As noted by the Seventh Circuit in *Synthroid*, "[t]he market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear." 264 F.3d at 721. The Seventh Circuit has

---

[6] The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflationary losses, and the loss of interest. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Smith v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994) ("A court may elect to use . . . current rates . . . as acceptable compensation for the delay in payment of fees."); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 958 (E.D. Wis. 2003) ("awarding fees at the current rate . . . is an accepted method").

[7] The actual realized multiplier will decline over time, as Lead Counsel will devote additional attorney time to drafting the reply brief, preparing for the Settlement Hearing, overseeing the processing of claims by the Claims Administrator, and overseeing the distribution of the Settlement proceeds to Class Members with valid claims.

also recognized "[t]he effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services." *McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967). In *City of Detroit v. Grinnell Corp.*, the Second Circuit explained:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

495 F.2d 448, 470 (2d Cir. 1974). *See also In re Continental*, 962 F.2d at 569 (holding it was reversible error not to compensate for risk of nonpayment).

While Lead Counsel believes that Lead Plaintiffs' claims are meritorious, Lead Counsel recognized that there were significant procedural and substantive hurdles that Lead Plaintiffs would have had to overcome to prevail in this complex securities fraud litigation. For example, at the time the Parties reached their agreement in principle to settle the Action, the Court had not yet ruled on Defendants' motion to dismiss the Complaint. ¶ 73. While Lead Plaintiffs and Lead Counsel believe that the motion would be denied, they also understood that Defendants raised a strong statute of limitations defense to the securities fraud claims in the Action, as well as numerous credible arguments regarding liability, loss causation, and damages. ¶¶ 74-84. These arguments created a significant risk that, after years of protracted litigation, Lead Plaintiffs and the Settlement Class would achieve no recovery at all, or a far smaller recovery than the Settlement Amount. ¶ 92.

As discussed in greater detail in the Browne Declaration and the memorandum of law in support of the Settlement, the core allegation in this case was that Defendants violated the federal securities laws by making materially false and misleading statements and failing to disclose material facts concerning the alleged API fraud—Stericycle's practice of automatically and

improperly increasing the prices it charged to its SQ customers by 18% every six months. In their motions to dismiss the CAC and in their renewed motion to dismiss the Amended CAC, Defendants argued that news of the API fraud reached the market more than two years before plaintiffs filed suit in July 2016, based on: (i) the January 8, 2013 announcement by the NYAG of its $2.4 million settlement with Stericycle and the contemporaneous unsealing of Perez *qui tam* complaint; and (ii) the Company's March 12, 2013 announcement of the filing of the Customer Case alleging the API fraud. ¶ 50. Based on these facts, Defendants argued that investors' claims were barred by the Exchange Act's two-year statute of limitations. While Lead Plaintiffs contend that these disclosures were not sufficient to trigger the statute of limitations, Defendants put forth credible arguments that might have convinced the Court or a jury that Lead Plaintiffs' claims were untimely. ¶ 73-76. If Defendants were successful in convincing the Court, or a jury, that the statute of limitations began to run in January 2013, or at the latest, March 2013, Lead Plaintiffs' securities fraud claims would have been dismissed, resulting in no recovery for the Class on these claims. ¶ 76.

Even if the Court had determined, at the motion-to-dismiss stage, that Lead Plaintiffs' claims were not time-barred by the statute of limitations, they continued to face substantial risks that the Court would find that they failed to establish Defendants' liability in this case. ¶ 77. For example, in their motion to dismiss the Complaint, Defendants vigorously argued that Lead Plaintiffs did not plead any actionable false or misleading statements or omissions because the market was fully aware of the Company's API pricing practices well before the Class Period began, and thus those alleged omissions were immaterial. ¶¶ 78-79. Further, Defendants argued that many of their purported affirmative misstatements were inactionable opinions, forward-looking statements, and/or inactionable puffery. ¶ 79.

13

Lead Plaintiffs also would have faced significant challenges in proving that Defendants made the alleged false statements with the intent to defraud. Defendants argued that, under Seventh Circuit law, the Court must discount as inherently suspect Lead Plaintiffs' reliance on statements from confidential witnesses to allege that the Individual Defendants were personally involved in the API fraud and knew that their statements about the Company's performance were misleading. ¶ 80-81. Further, Defendants argued that mere knowledge of the APIs fails to establish that Defendants knowingly or recklessly misled investors. ¶ 82. If Defendants succeeded in convincing the Court or a jury that they did not act with the requisite scienter, this would have resulted in zero recovery for Lead Plaintiffs and the Class under the Exchange Act claims. *Id*. For these reasons, there was a real risk that, had the litigation continued, the Court or a jury could have found that Defendants' alleged misstatements or omissions did not trigger liability under the securities laws.

Even if Lead Plaintiffs overcame each of the above risks and successfully established falsity, materiality, and scienter, they faced significant hurdles in establishing "loss causation"— that the alleged misstatements were the cause of investors' losses—and in proving damages. Defendants put forth strong arguments that the price declines on the alleged corrective disclosure dates were not due to the revelation of the alleged misstatements or omissions, but rather were attributable to general pricing pressure and/or other negative disclosures about the Company and its industry, unrelated to Lead Plaintiffs' fraud allegations, such as the Company's decelerated SQ growth, among other things. ¶¶ 83-84.

Finally, the proposed Settlement is noteworthy because it exceeds available insurance proceeds although Stericycle has relatively little cash on hand. Indeed, this case involved serious "ability to pay" issues that injected an additional level of uncertainty into Lead Plaintiffs' ability to recover on their claims. As discussed in the Browne Declaration, at the time the Parties reached

the agreement to settle the Action on December 6, 2018, Stericycle's stock was trading at approximately $45 per share—a 35% decline from the Company's stock price of $70 per share near the beginning of August 2018. ¶ 85. Further, the Company has been undergoing numerous layoffs and costly restructurings and, as of Stericycle's most recent Form 10-Q filed with the SEC on May 2, 2019, the Company's free cash on hand had decreased to only $48.2 million. ¶ 86. As a result of these considerations, Lead Plaintiffs and Lead Counsel believed at the time of settlement that the Company had little or no ability to sustain a large litigation judgment in this case and there was a very substantial risk that, even if Lead Plaintiffs prevailed on all issues through the remainder of the litigation and secured a verdict at trial, such a victory might be meaningless to the Class because they would not be able to recover on that judgment. By contrast, the Settlement provides a substantial, immediate, and certain amount for the Class.

In light of these uncertainties regarding the outcome of the case, it is clear that Plaintiffs' Counsel were never "assured of a paycheck." *See Florin v. Nationsbank of Ga., N.A. ("Florin II")*, 60 F.3d 1245, 1247 (7th Cir. 1995). Unlike Defendants' counsel, who are paid currently and whether they win or lose, Plaintiffs' Counsel have thus far received no compensation for their considerable efforts on behalf of the Settlement Class, and any award of fees or expenses to counsel has always been entirely dependent on their success in obtaining a common fund for the Class.

In sum, the only certainties regarding the prosecution of the claims in the Action were that Defendants would continue to vigorously contest each element of those claims at trial and on appeal, and there was a significant risk of non-recovery. Clearly, the litigation risk here supports the reasonableness of the requested fee. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1032 (N.D. Ill. 2011); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 411 (E.D. Wis. 2002).

15

### 5.    The Quality of Legal Services Rendered Supports the Fee Request

In evaluating a fee request, the Seventh Circuit has held that the trial court may consider the "quality of legal services rendered" by plaintiffs' counsel. *Taubenfeld*, 415 F.3d. at 600; *Synthroid*, 264 F.3d at 721. From the inception of the Action, Lead Counsel engaged in a skillful and concerted effort to obtain the maximum recovery for the Class. This case required an in-depth investigation, a thorough understanding of complicated issues, and the skill to respond to a host of legal and factual issues raised by Defendants during the litigation. Lead Counsel practices extensively in the highly challenging field of complex class action litigation and has skillfully litigated these types of actions in courts across the country. *See* Browne Decl. ¶ 116 and Ex. 3 to Ex. 5A. Here, the Settlement provides an excellent result for the Class particularly in light of the risks of continued litigation. Lead Counsel respectfully submits that the quality of its diligent efforts in the litigation to date, together with its substantial experience in complex class actions and its commitment to the litigation, provided it with the leverage necessary to negotiate the Settlement.

The quality of opposing counsel is also an important factor in evaluating the work performed by Plaintiffs' Counsel. *Arenson v. Bd. of Trade of Chicago*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work"), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Plaintiffs' Counsel were opposed in this case by the nationally known and highly capable law firms of Latham & Watkins LLP, counsel for the Stericycle Defendants, and Winston & Strawn LLP, counsel for the Underwriter Defendants, who have spared no effort in their zealous defense of the Action. ¶ 118. Notwithstanding this formidable opposition, Lead Counsel presented a strong case

and demonstrated its willingness to continue to vigorously prosecute the claims asserted in the Action. The ability of Lead Counsel to obtain a favorable result for the Settlement Class while litigating against these powerful defense firms further evidences the quality of counsel's work and weighs in favor of the Court granting the attorneys' fees sought here.

### 6. The Approval of Lead Plaintiffs and the Reaction of the Settlement Class to Date Support the Requested Fee

Lead Plaintiffs, which were actively involved in the prosecution and settlement of the Action and have actively supervised the work of counsel, have approved the requested fee. *See* Kilgore Decl. ¶¶ 5-6, 8; Graves Decl. ¶¶ 6-7, 9. This endorsement of the fee by Lead Plaintiffs as fair and reasonable supports approval of the fee. *See In re Marsh & McLennan, Inc. Sec. Litig.*, 2009 WL 5178546, at *16 (S.D.N.Y. Dec. 23, 2009) ("public policy considerations support fee awards where, as here, large public pension funds, serving as lead plaintiffs, conscientiously supervised the work of lead counsel, and gave their endorsement to lead counsel's fee request").

The reaction of the Settlement Class to date also supports the requested fee. Pursuant to the Preliminary Approval Order, through June 14, 2019, the Claims Administrator, JND, disseminated 304,811 copies of the Notice to potential Class Members and nominees, informing them, among other things, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and up to $350,000 in expenses. *See* Segura Decl. Ex. A, at ¶¶ 5, 76. While the time to object to the fee and expense application does not expire until July 1, 2019, to date, no objections have been received. ¶¶ 98, 125, 136. Should any objections be received, Lead Counsel will address them in its reply papers.

### B. The Request for Reimbursement of Litigation Expenses Should Be Approved

In addition to attorneys' fees, Lead Counsel also seeks reimbursement of the Litigation Expenses incurred by Plaintiffs' Counsel through June 14, 2019. It is well-settled that attorneys

who have created a common fund for the benefit of a class are entitled to reimbursement for their expenses incurred in creating the fund. *See, e.g.*, *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 389-90 (1970); *Dalton v. Jones, Bird & Howell*, 1993 U.S. App. LEXIS 11377, at \*4 (7th Cir. May 13, 1993) ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services and reimbursement of their out-of-pocket expenses."). As set forth in detail in the Browne Declaration, Plaintiffs' Counsel collectively incurred $192,433.77 in Litigation Expenses in connection with the institution, prosecution, and settlement of the Action. ¶ 129.

The expenses for which Lead Counsel seeks reimbursement are all reasonable, necessary, and directly related to the prosecution of the Action. These expenses include, among others, charges for on-line research, expert fees, mediation fees, travel costs, copying costs, and postage and delivery expenses. *Id*. All of these expenses were reasonably and necessarily incurred, and are of the sort that would typically be charged to paying clients in the marketplace. *See Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at \*4 (S.D. Ill. July 17, 2015) ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation.").[8] These expense items were charged separately by Plaintiffs' Counsel, and such charges were not duplicated in the firms' hourly rates. Reimbursement of these expenses is fair and reasonable.

---

[8] *See Synthroid*, 264 F.3d at 722 (explaining the appropriateness of considering what the private market would bear in determining the reasonableness of litigation expenses); *Kaplan v. Houlihan Smith & Co.*, 2014 U.S. Dist. LEXIS 83936, at \*12-13 (N.D. Ill. June 20, 2014) (awarding expenses in class action including copying costs, *pro hac vice* admission fees, overnight shipping fees, travel and meal expenses, and mediation fees); *see also Beane v. Bank of N.Y. Mellon*, 2009 U.S. Dist. LEXIS 27504, at \*25-26 (S.D.N.Y. Mar. 31, 2009) (awarding as "properly chargeable to the Settlement Fund," because they "are the type for which 'the paying, arms' length market' reimburses attorneys," reimbursement for court fees, photocopying and reproduction, deposition transcripts, postage and messenger services, transportation and lodging, telephone bills, and expert and electronic litigation database support).

In connection with its request for reimbursement of Litigation Expenses, Lead Counsel also seeks reimbursement of $22,492.11 in costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Settlement Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, Lead Plaintiffs both took active roles in the litigation and have been fully committed to pursuing the Class's claims since they became involved in the litigation. *See* Kilgore Decl. ¶¶ 5-6; Graves Decl. ¶¶ 6-7. These efforts, which included reviewing pleadings and briefs filed in the Action, communicating regularly with Lead Counsel regarding case strategy and developments, attending the mediation, consulting with Lead Counsel regarding settlement negotiations, and evaluating and approving the Settlement, required employees of Lead Plaintiffs to dedicate time they otherwise would have devoted to their regular duties. *See* Kilgore Decl. ¶¶ 5-6, 10; Graves Decl. ¶¶ 6-7, 13. The requested reimbursement amounts are based on the number of hours that Lead Plaintiffs' employees committed to these activities multiplied by a reasonable hourly rate for each employee. The reimbursement amounts requested, $21,618.75 for Miss. PERS and $873.36 for ATRS, are reasonable and justified under the PSLRA and Courts have routinely granted similar awards to plaintiffs for reimbursement of expenses in similar cases. *See, e.g.*, *Duncan v. Joy Global Inc., et al.*, No. 16-cv-1229-pp, slip op. at 2 (E.D. Wis. Dec. 27, 2018), ECF No. 79 (awarding two lead plaintiffs amounts ranging from $2,400 to $23,000 for reimbursement of reasonable costs and expenses, including lost wages) (Ex. 16); *In re ITT Educ. Servs., Inc. Sec. Litig. (Indiana)*, 2016 WL 1162534, at *5 (S.D. Ind. Mar. 24, 2016) (awarding institutional lead plaintiff $10,000 for reasonable costs and expenses directly related to its representation of the settlement Class,

including for lost wages); *AT&T Mobility*, 792 F. Supp. 2d at 1041 (approving $5,000 for each class representative, despite the lack of any formal discovery, for "their role in reviewing, considering, and approving the Settlement Agreement and fee application, and especially their willingness to take a more-active role if necessary"); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (granting PSLRA awards where, as here, "the tasks undertaken by employees of lead plaintiffs reduced the amount of time those employees would have spent on other work and these tasks and rates appear reasonable to the furtherance of the litigation").

The Notice informed potential Class Members that Lead Counsel would apply for reimbursement of Litigation Expenses in an amount not to exceed $350,000, which may include the reasonable costs and expenses of Lead Plaintiffs directly related to their representation of the Settlement Class. The total amount of expenses requested by Lead Counsel is $214,925.88, which includes $192,433.77 in Litigation Expenses incurred by Plaintiffs' Counsel, $21,618.75 in costs incurred by Miss. PERS, and $873.36 in costs incurred by ATRS, and is well below the amount listed in the Notice. To date, there has been no objection to the request for expenses.

## III. CONCLUSION

Lead Counsel respectfully requests that the Court: (i) award attorneys' fees in the amount of 25% of the Settlement Fund; (ii) award $192,433.77 as reimbursement for the reasonable Litigation Expenses that Plaintiffs' Counsel incurred in connection with the prosecution and resolution of the Action; and (iii) award $21,618.75 to Miss. PERS and $873.36 to ATRS as

reimbursement for their costs and expenses directly related to their representation of the Settlement Class.

Dated:  June 17, 2019                          Respectfully submitted,

                                         By: */s/ John C. Browne*
                                           John C. Browne (admitted *pro hac vice*)
                                           Adam H. Wierzbowski (admitted *pro hac vice*)
**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
Email:  johnb@blbglaw.com
Email:  adam@blbglaw.com

**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, IL 60611
Telephone:  (312) 373-3880
Facsimile:  (312) 794-7801
Email:  avi@blbglaw.com

*Lead Counsel for Lead Plaintiffs*
*and the Settlement Class*

**GADOW TYLER, PLLC**
Jason M. Kirschberg
511 E Pearl St.
Jackson, MS 39201
Telephone:  (601) 355-0654
Facsimile:  (601) 510-9667
Email:  jason@gadowtyler.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, John C. Browne, an attorney, hereby certify that a copy of the foregoing **"Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses"** was served on counsel for all parties electronically via the CM/ECF system on June 17, 2019.

Dated:  June 17, 2019                    By:     */s/ John C. Browne*
                                                         John C. Browne

#1300127