# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

*In re Stericycle, Inc. Securities Litigation*

Civ. A. No. 1:16-cv-07145
Hon. Andrea R. Wood

<u>CLASS ACTION</u>

ECF CASE

## <u>LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO OBJECTOR MARK PETRI'S MOTION TO LIFT STAY FOR LIMITED DISCOVERY</u>

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, IL 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
Email: Avi@blbglaw.com

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
John C. Browne (admitted *pro hac vice*)
Adam H. Wierzbowski (admitted *pro hac vice*)
Julia K. Tebor (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Email: JohnB@blbglaw.com
Email: Adam@blbglaw.com
Email: Julia.Tebor@blbglaw.com

*Lead Counsel for Lead Plaintiffs the Public Employees' Retirement System of Mississippi and the Arkansas Teacher Retirement System*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .......................................................................................................................... 2

I.    MR. PETRI'S UNSUPPORTED AND FALSE SPECULATION DOES NOT SATISFY THE STANDARDS FOR GRANTING DISCOVERY ................................... 2

    A.    The Discovery Motion Should Be Denied Because It Is Untimely And Does Not Comply With Local Rule 37.2 ................................................................ 2

    B.    The Discovery Motion Should Be Denied Because Mr. Petri Does Not Identify Any Particularized Facts Sufficient To Lift The Discovery Stay ............ 4

II.    THE MOTION IS MOOT BECAUSE MR. PETRI HAS ALL POTENTIALLY RELEVANT INFORMATION SOUGHT BY HIS DISCOVERY ................................. 7

    A.    The Request For Retention Agreements, Fee Sharing Agreements And Allocation Of Attorneys' Fees Is Moot ................................................................ 7

    B.    The Request For Litigation Financing Arrangements Demonstrates That Mr. Petri Is Engaging In An Improper Fishing Expedition ................................... 9

    C.    The Request For Constitutionally-Protected Campaign Donations, Which Are A Matter Of Public Record, Is Moot ............................................................. 9

    D.    The Request For Additional Time Records Is Unnecessary, Irrelevant, Burdensome, Harassing And Moot ...................................................................... 10

CONCLUSION ....................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
  814 F.3d 132 (2d Cir. 2016) ................................................................................................ 1, 3

*Epstein v. Wittig*,
  2005 WL 3276390 (D. Kan. Dec. 2, 2005) ................................................................................ 5

*Gascho v. Glob. Fitness Holdings, LLC*,
  2016 WL 2802473 (6th Cir. May 13, 2016) ............................................................................ 10

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................................................ 6

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .................................................................................................. 10

*In re Countrywide Fin. Corp. Sec. Litig.*,
  273 F.R.D. 586 (C.D. Cal. 2009) ........................................................................................... 10

*In re Dairy Farmers of Am., Inc.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) ................................................................................. 11, 12

*In re Diamond Foods, Inc. Sec. Litig.*,
  295 F.R.D. 240 (N.D. Cal. 2013) ........................................................................................... 10

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................................... 6

*In re Fannie Mae Sec. Litig.*,
  362 F. Supp. 2d 37 (D.D.C. 2005) ........................................................................................... 5

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
  726 F.2d 1075 (6th Cir. 1984) ................................................................................................. 5

*In re Lupron Mktg. & Sales Practices Litig.*,
  2005 WL 613492 (D. Mass. Mar. 16, 2005) ......................................................................... 5, 6

*In re Pall Corp. Class Action Attorneys' Fees Application*,
  2013 WL 1702227 (E.D.N.Y. Apr. 8, 2013) .......................................................................... 12

*Jaffee v. Morgan Stanley & Co., Inc.*,
  2008 WL 346417 (N.D. Cal. Feb. 7, 2008) .............................................................................. 6

*Mars Steel Corp. v. Cont'l Ill. Nat. Bank & Tr. Co. of Chi.*,
  834 F.2d 677 (7th Cir. 1987) ................................................................................................... 6

*Medoff v. CVS Caremark Corp.*,
 2016 WL 632238 (D.R.I. Feb. 17, 2016) ................................................................................10

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
 277 F.R.D. 97 (S.D.N.Y. 2011) ................................................................................................9

*Sarantakis v. Gruttadauria*,
 2002 WL 1803750 (N.D Ill. Aug. 5, 2002) ..............................................................................4

*Schulte v. Fifth Third Bank*,
 805 F. Supp. 2d 560 (N.D. Ill. 2011) ......................................................................................11

*Siemer v. Quizno's Franchise Co. LLC*,
 2010 WL 3238840 (N.D. Ill. Aug. 13, 2010) ...........................................................................6

*Tavares v. S-L Distribution Co.*,
 2016 WL 1743268 (M.D. Pa. May 2, 2016) ..........................................................................12

*Vaughn v. Am. Honda Motor Co., Inc.*,
 2007 WL 2220924 (E.D. Tex. July 31, 2007) ..........................................................................6

*Williams v. Rohm & Haas Pension Plan*,
 2010 WL 1644571 (S.D. Ind. Apr. 21, 2010) ........................................................................10

*Williams v. Rohm & Haas Pension Plan*,
 658 F.3d 629 (7th Cir. 2011) ..................................................................................................12

**STATUTES**

15 U.S.C. § 78u-4(b)(3)(B) ...........................................................................................................4

Lead Plaintiffs the Public Employees' Retirement System of Mississippi ("MissPERS") and the Arkansas Teacher Retirement System ("ATRS") respectfully submit this memorandum of law in opposition to Objector Mark Petri's Motion to Lift Stay for Limited Discovery (Dkt. #121) (the "Discovery Motion" or "Motion").[1]

## PRELIMINARY STATEMENT

The Discovery Motion is brought by a serial objector who, along with other members of his family, routinely and reflexively objects to class action settlements as part of a revenue-generating business model created by the professional objectors' attorney who purportedly represents him "*pro bono*" in this case. *See* Reply Memorandum of Law in Further Support of Settlement and Fee and Expense Application ("Reply Br.").[2] The Motion is meritless.

It is based entirely on speculation and demonstrably false inferences that Mr. Petri's lawyers attempt to draw from two separate (and public) matters: (1) *Arkansas Teacher Retirement System v. State Street Bank & Trust,* No. 11-10240-MLW (D. Mass.), which involves a different law firm; and (2) the plaintiff's unproven and subsequently voluntarily-dismissed allegations in *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016), a long-resolved employment dispute where the plaintiff alleged that, unlike here, certain attorneys were paid without disclosure to the court.

Try as he might to concoct a story of a secret conspiracy from public documents and misdirected innuendo, Mr. Petri's Discovery Motion falls woefully short of showing any

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement dated February 14, 2019 (Dkt. #108-1) (the "Stipulation") or the Declaration of John C. Browne in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses dated June 17, 2019 (Dkt. #119) (the "Browne Decl.").

[2] Lead Plaintiffs are also filing herewith the Supplemental Declaration of John C. Browne (the "Browne Supp. Decl.").

particularized facts that could possibly justify the extraordinary outcome he seeks—allowing intrusive discovery of Lead Plaintiffs at the Final Approval stage of a $45 million securities class action settlement that Mr. Petri himself concedes is fair and reasonable and which the Class has overwhelmingly endorsed.

Even if the Discovery Motion had a shred of merit (it does not), it is moot because every conceivably relevant piece of information it seeks already has been disclosed to the Court or is being voluntarily disclosed by Lead Plaintiffs in their reply papers filed today. *See* Section II below. This case has been pending for three years, the proposed Settlement is an outstanding result, and the ***only*** objection to the attorneys' fees (despite more than 300,000 class notices being distributed) is from a professional objector. His lawyer's personal motives for delaying the finalization of the Settlement and attorneys' fee award are painfully obvious, but the Motion does not serve the interests of the Class. The Class has spoken. It has made clear that the requested attorneys' fees and expenses are fair and reasonable and the Settlement should be approved.

## ARGUMENT

**I.  MR. PETRI'S UNSUPPORTED AND FALSE SPECULATION DOES NOT SATISFY THE STANDARDS FOR GRANTING DISCOVERY**

The Discovery Motion should be denied for multiple reasons, spanning the spectrum from the procedural to the substantive.

### A.  The Discovery Motion Should Be Denied Because It Is Untimely And Does Not Comply With Local Rule 37.2

The Discovery Motion should be denied because it fails to comply with this Court's rules and was filed too late.

First, the Court should deny the Motion because Mr. Petri did not comply with Local Rule 37.2, which provides that the Court "shall" refuse to hear motions for discovery unless the

requesting party confers in good faith with opposing counsel on the motion before filing. *See* Local Civil Rule 37.2. Mr. Petri's counsel did not do so and his Motion should be denied for that reason alone.

Second, the long delay in bringing the Motion demonstrates that Mr. Petri does not really need the discovery he seeks. The "facts" cited in the Motion as a purported basis for discovery have been publicly available for a long time. The identity of the Co-Lead Plaintiffs—ATRS and MissPERS—has been a matter of public record since at least September 2016, when they sought appointment as Co-Lead Plaintiffs before this Court. Dkt. #30. The *Bernstein* lawsuit that Mr. Petri cites was public on February 24, 2016—more than three years ago and nearly seven months before Mississippi even sought to become Lead Plaintiff in this case. Similarly, the ongoing *State Street* matter has been widely publicized since the summer of 2017 and the portions of that extensive record Mr. Petri chooses to cherry pick for citation in his Motion are more than one year old.[3]

If Mr. Petri truly needed discovery in order to object to Lead Counsel's attorneys' fee request, he could have and should have filed his motion months or years ago. By delaying until the eleventh hour when objections were due, and waiting an additional seven days to file his actual requests for discovery (*see* Dkt. #125), Mr. Petri has confirmed that the discovery he seeks is not truly necessary. Indeed, he and his attorneys have managed to lodge a lengthy and prolix objection without any discovery. *See* Dkt. #120 (the "Objection" or "Petri Obj."). The reason that the Objection is unpersuasive is not because Mr. Petri needs discovery—it is because, as

---

[3] The constitutionally-protected (and publicly-disclosed) campaign contributions cited by Mr. Petri extend back in time for more than ten years. And, as Mr. Petri notes, the participation of Gadow Tyler, PLLC ("Gadow Tyler") in this case was a matter of public record no later than February 25, 2019, when Lead Plaintiffs filed their motion for preliminary approval of the Settlement, which also disclosed Lead Counsel's fee and expense requests. *See* Dkt. #110.

3

demonstrated herein and in Lead Plaintiffs' accompanying Reply Brief, the Objection utterly lacks merit.

### B. The Discovery Motion Should Be Denied Because Mr. Petri Does Not Identify Any Particularized Facts Sufficient To Lift The Discovery Stay

There are at least two explicit discovery stays in this case: (1) the stay ordered by this Court's Preliminary Approval Order (Dkt. #111, ¶ 12); and (2) the mandatory discovery stay imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[4] Mr. Petri does not identify any particularized facts sufficient to lift either of these stays.

The stay imposed by the Court at the preliminary approval stage was designed to ensure the orderly conclusion of this matter without unnecessary delay, harassment, or extraneous discovery side shows of the type that Mr. Petri's lawyers seek to engage in here. Mr. Petri does not identify any plausible basis to justify lifting this Court's prior discovery stay to allow his so-called "*pro bono*" lawyers to embark on a wishful fishing expedition to the detriment of the Class, delaying final resolution of this case in the futile hope that they **may** find something (which doesn't exist) that would enable them to later seek attorneys' fees of their own.

Mr. Petri also fails to cite to the types of particularized facts that are necessary to lift the mandatory discovery stay imposed by the PSLRA. The PSLRA stays "all discovery" prior to the determination of a motion to dismiss, unless the court finds that "particularized discovery is ***necessary*** . . . to prevent undue prejudice[.]" 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added). "The mandatory stay under the PSLRA may be lifted only in exceptional circumstances." *Sarantakis v. Gruttadauria*, 2002 WL 1803750, at *2 (N.D Ill. Aug. 5, 2002). It is widely

---

[4] In the papers he filed on July 8, 2019, Mr. Petri asserts that there is an "implicit" stay on discovery. *See* July 8, 2019 Declaration of M. Frank Bednarz, Dkt. #125 at ¶ 5. In his prior papers, however, he concedes the existence of these explicit statutory and Court-ordered discovery stays. *See, e.g.,* Discovery Motion at 1.

recognized that the PSLRA discovery stay places a "heavy" burden on any party seeking discovery. *In re Fannie Mae Sec. Litig.,* 362 F. Supp. 2d 37, 38 (D.D.C. 2005).

As explained more fully in the Reply Brief, Mr. Petri bases his discovery request on speculative concerns that are contradicted by the record and fall far short of demonstrating "exceptional circumstances" or undue prejudice sufficient to lift the PSLRA discovery stay. Motions to lift the PSLRA discovery stay are routinely denied even when supported by grounds far stronger than those Mr. Petri raises here. *See, e.g., Joshi Living Trust, et al. v. Akorn*, *Inc.*, *et al.*, No. 18-cv-1713 (N.D. Ill.) (Kennelly, J.), Dkt. #51 (Browne Supp. Decl., Ex. 21).

Finally, even in cases where there is no statutory discovery stay, it is exceptionally rare for a court to grant an objector's request for discovery, particularly at this late hour. The general rule is that discovery by objectors must be "***conditioned on a showing of need***, because it will delay settlement, introduce uncertainty, and might be undertaken primarily to justify an award of attorney fees to the objector's counsel." *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 613492, at *2 (D. Mass. Mar. 16, 2005) (quoting MANUAL FOR COMPLEX LITIGATION, FOURTH §21.643 (2004) (emphasis added); *Epstein v. Wittig*, 2005 WL 3276390, at *7 (D. Kan. Dec. 2, 2005) (same).[5]

The "fundamental question is whether the district judge has sufficient facts before him [or her] to intelligently approve or disapprove the settlement." *Lupron*, 2005 WL 613492, at *2. In this case, there is an extensive record before the Court that is more than sufficient to evaluate whether the settlement and fee request are fair and reasonable, including the fact that the significant $45 million proposed Settlement was pursuant to the recommendation of an

---

[5] *See also In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984) ("While objectors are entitled to meaningful participation in the settlement proceedings, and leave to be heard, they are not automatically entitled to discovery or to question and debate every provision of the proposed compromise") (citations and quotation marks omitted).

5

independent mediator after lengthy arms' length negotiations. Also supporting the settlement and fee request is the very small number of objectors—there is only one objection to the Settlement (by an investor who purchased just 49 shares) and only one objection to the fee request (by a professional objector who purchased just 180 shares).

Courts routinely deny objectors' requests for discovery when there are few objectors. *See Siemer v. Quizno's Franchise Co. LLC*, 2010 WL 3238840, at *3 (N.D. Ill. Aug. 13, 2010) (courts are disinclined to permit discovery where "objectors represent only a small percentage of the class"); *Lupron*, 2005 WL 613492, at *2 ("The criteria relevant to the court's decision of whether or not to permit discovery [include] . . . [the] number and interests of objectors") (citation omitted)); *see also Jaffee v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *2 (N.D. Cal. Feb. 7, 2008) ("the Court has sufficient facts before it to intelligently evaluate the settlement, and discovery would cause unnecessary delay"); *Vaughn v. Am. Honda Motor Co., Inc.*, 2007 WL 2220924, at *2 (E.D. Tex. July 31, 2007) (objector did not make a showing that "additional discovery is required or that the Court lacks vital information to determine fairness in this case").[6]

In sum, Mr. Petri's Motion for Discovery should be denied because it fails to demonstrate a compelling need for the discovery and is contrary to the Class's interests.

---

[6] It is also well-recognized that "[a] request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), and a court is entitled to give substantial weight to the opinions of the parties and experienced counsel, who are most familiar with the facts of the case. *See, e.g., Mars Steel Corp. v. Cont'l Ill. Nat. Bank & Tr. Co. of Chi.*, 834 F.2d 677, 684 (7th Cir. 1987); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("a court neither substitutes its judgment for that of the parties who negotiated the settlement nor conducts a mini-trial of the merits of the action").

**II.    THE MOTION IS MOOT BECAUSE MR. PETRI HAS ALL POTENTIALLY RELEVANT INFORMATION SOUGHT BY HIS DISCOVERY**

Mr. Petri's Discovery Motion would be moot even if it had merit because Lead Counsel and Lead Plaintiffs have voluntarily disclosed to the Court all of the remotely relevant information Mr. Petri seeks.

**A.    The Request For Retention Agreements, Fee Sharing Agreements And Allocation Of Attorneys' Fees Is Moot**

The core theory of both the Petri Objection and the Discovery Motion appears to be Mr. Petri's wild speculation that Lead Counsel might be sharing attorneys' fees with individuals or entities who have not been disclosed to the Court or to the Lead Plaintiffs. ***This is not correct.***

Lead Plaintiffs' June 17, 2019 filings in support of final approval of the settlement and request for attorneys' fees and expenses disclosed every single firm that will receive a payment from attorneys' fees in this case, if any are awarded. *See* Browne Decl., Dkt. #119 at ¶¶106, n.8, 112, 138, and Ex. 5.

For the avoidance of doubt, Lead Counsel and Lead Plaintiffs hereby reaffirm that the ***only*** three firms that will be paid from any award of attorneys' fees are Lead Counsel, Gadow Tyler, and Klausner, Kaufman, Jensen & Levinson ("KKJ&L"). *See* Browne Supp. Decl. ¶ 4; *see also* Supplemental Declaration of Donald L. Kilgore, attached as Ex. 1 to the Browne Supp. Decl., ¶¶ 20-21; Supplemental Declaration of Rod Graves, attached as Ex. 2 to the Browne Supp. Decl., ¶ 5. Moreover, even though there is no requirement in Rule 23, this Court's Local Rules, or elsewhere, to disclose the allocation of attorneys' fees, Lead Counsel voluntarily does so here: the attorneys' fees, if any, will be divided among counsel based on the work they performed, with each firm receiving the same multiplier on its lodestar. Thus, if the attorneys' fees request is granted in full, the allocation would be approximately as follows:

| Firm | Lodestar | Multiplier[7] | Fee Allocation |
|---|---|---|---|
| BLB&G | $3,806,615.00 | 2.81 | $10,713,668.44 |
| Gadow Tyler | $153,400.00 | 2.81 | $431,742.31 |
| KKJ&L | $18,070.00 | 2.81 | $50,857.78 |

Browne Supp. Decl. ¶ 3.

This information is the core of what Mr. Petri seeks in discovery and it moots virtually all of his even arguably relevant discovery requests. *See* Dkt. #125-1 (mooting Interrogatories 1-5); Dkt. #125-2 (mooting Document Request No. 3).[8]

Mr. Petri's request for a breakdown of fee allocations in every case involving Lead Counsel and Lead Plaintiffs for the ***last ten years*** (Dkt. #125-1) (Interrogatory No. 4) is patently overbroad and utterly irrelevant to any issue in this case. There is simply no need for this information to permit the Court to assess the reasonableness of the requested attorneys' fees in this case. Indeed, the request primarily serves to confirm the true nature of Mr. Petri's Objection—a purely speculative endeavor intended to harass Lead Counsel and Lead Plaintiffs in the vain hope that Mr. Petri's lawyers can later seek a fee for themselves. This request should be denied.

---

[7] The calculations of the multiplier here reflects the inclusion of the lodestar from KKJ&L and is based on an award of attorneys' fees net of expenses, as explained in the Browne Supp. Decl. at ¶3 n.2.

[8] It is unclear why Mr. Petri claims he needs retention agreements as he includes the retention agreement between BLB&G and Mississippi—which is a publicly available document—as an exhibit to his Objection, *see* Dkt. #120-25 (Exhibit V to the Bednarz Declaration), and cites extensively to the agreement with ATRS. *See* Mot. at 12-13.

8

### B. The Request For Litigation Financing Arrangements Demonstrates That Mr. Petri Is Engaging In An Improper Fishing Expedition

The discovery requests Mr. Petri filed on July 8, 2019 include an Interrogatory asking Lead Counsel to identify "any LITIGATION FINANCING AGREEMENTS that pertain to this case." Dkt. #125-1 (Interrogatory No. 7). This thought apparently popped into Mr. Petri's head after he filed his Discovery Motion and Objection, because neither of them mention anything about "litigation financing agreements." Nor does Mr. Petri anywhere explain how this request is remotely relevant to the Court's adjudication of Lead Counsel's request for attorneys' fees.

What the belated addition of this request does reveal, however, is that the Discovery Motion is nothing but an improper fishing expedition of the type courts routinely reject. While it is completely irrelevant to any issue, Lead Counsel will voluntarily disclose here that there are no litigation financing agreements that pertain to this case. Browne Supp. Decl. ¶ 5. Accordingly, Interrogatory No. 5 is also moot.

### C. The Request For Constitutionally-Protected Campaign Donations, Which Are A Matter Of Public Record, Is Moot

Mr. Petri's discovery requests related to political contributions are irrelevant and moot. Dkt. #125-1 (Interrogatory No. 6). First, as explained in the Reply Brief these contributions are constitutionally protected and have no bearing whatsoever on whether the proposed Settlement of this matter and the attorneys' fee request are fair and reasonable. Numerous courts have rejected these precise arguments. *See Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 110 (S.D.N.Y. 2011) (certifying MissPERS as class representative and rejecting

9

"entirely unpersuasive" insinuations regarding conflicts of interest arising from political donations); *In re Diamond Foods, Inc. Sec. Litig.*, 295 F.R.D. 240, 255 (N.D. Cal. 2013) (same).[9]

Second, all political contributions are a matter of public record and are easily obtainable by Mr. Petri or anyone else in the world. Indeed, Mr. Petri cites repeatedly to specific information regarding individual attorneys' political donations throughout his Objection and Discovery Motion. *See, e.g.,* Mot. at 5-9; Petri Obj. at 8, 11; Bednarz Decl. (Dkt. #120-3), Exs. E, M, N, R, S, T. Because Mr. Petri and his lawyers already have this publicly-available information, these irrelevant requests are also moot.

#### D. The Request For Additional Time Records Is Unnecessary, Irrelevant, Burdensome, Harassing And Moot

Mr. Petri's requests for contemporaneous time records (Dkt. #125-2 (Request Nos. 1 and 2)) should be denied because Lead Counsel already has provided the Court with multiple declarations describing in detail the work counsel has performed. *See* Browne Decl., Dkt. #119 at ¶¶12-15, 29-64, Ex. 5. As numerous courts have recognized, there is no need for any additional information. *See, e.g., Williams v. Rohm & Haas Pension Plan*, 2010 WL 1644571, at *2 (S.D. Ind. Apr. 21, 2010) (counsel need submit only "a breakout by name of each attorney and other legal professionals who assisted in the prosecution of this litigation…along with a tally of the hours expended by each and their respective billing rates"); *Gascho v. Glob. Fitness Holdings, LLC*, 2016 WL 2802473, at *10 (6th Cir. May 13, 2016) (billing information similar to that supplied by Plaintiffs' Counsel in this case sufficient to uphold a fee award).

---

[9] *See also Middlesex County Retirement System v. Semtech Corp.,* No. 07-cv-7114, Dkt. #234 (C.D. Cal. Aug. 27, 2010) (Browne Supp. Decl., Ex. 10) at 8 (same); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 269 (3d Cir. 2001) (rejecting arguments regarding campaign contributions); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 604-05 (C.D. Cal. 2009) ("attorneys are free to exercise their right to donate to politicians who support their views"); *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *3 (D.R.I. Feb. 17, 2016) (holding that contributions do not create conflict).

Mr. Petri's request for counsel's billing records should also be denied because there is an unsettling lack of good faith behind his request.

First, faced with the reality that there is no legal authority to support his position, Mr. Petri mischaracterizes this Court's Local Rules. He cites to Northern District of Illinois Local Rule 54.3(d), which states that the movant seeking attorneys' fees under that rule shall, upon request, "provide the respondent with the time and work records on which the motion will be based, and shall specify the hours for which compensation will and will not be sought." N.D. Ill. L.R. 54.3(d)(1). Mr. Petri, however, fails to mention that Local Rule 54.3(d) expressly does ***not*** apply to "a fee motion that would be paid … ***out of a fund already created … by settlement***"— the precise situation here. N.D. Ill. L.R. 54.3(a) (emphasis added).

Second, as Lead Counsel pointed out in its opening papers, the lodestar method is simply a "cross-check" on the reasonableness of the requested fee percentage. *See* Dkt. #118 at 10-11. Where, as here, the lodestar multiplier is well within the range typically awarded by courts, there is no need to perform a detailed evaluation of the time records of counsel. *See Schulte v. Fifth Third Bank,* 805 F. Supp. 2d 560, 598, n.27 (N.D. Ill. 2011) ("[U]se of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive"); *see also In re Dairy Farmers of Am., Inc.,* 80 F. Supp. 3d 838, 849 (N.D. Ill. 2015) ("For attorneys who are arguing for a percentage-of-the-fund fee award, any delineation of hours is seemingly unnecessary[.]").

In arguing otherwise, Mr. Petri is contradicting the position his lawyers took just last year before The Honorable Sharon Johnson Coleman in *Eubank v. Pella Corp.*, No. 06 C 4481 (N.D. Ill.), when they were seeking $1.5 million in attorneys' fees for themselves, representing a lodestar multiplier of 9.3. In that case, they accurately described the law as follows:

11

> District courts in the Seventh Circuit ***are under no obligation to cross-check the requested fees against the lodestar***. *In re Dairy Farmers of Am., Inc.,* 80 F. Supp. 3d 838, 849 (N.D. Ill. 2015); *see also Williams v. Rohm & Haas Pension Plan,* 658 F.3d 629, 636 (7th Cir. 2011); 5 *Newberg on Class Actions* Sec, 15.88 (5th ed.) (noting in Seventh Circuit that "a cross-check is not applicable"). Indeed, the Seventh Circuit has emphasized that attorneys' fees ***do not depend on "how much effort … counsel invested in the litigation,***" but rather on "what .. counsel achieved." *Redman,* 768 F.3d at 633.

Browne Suppl. Decl., Ex. 16 at 11 (emphasis added).

It is for precisely these reasons that courts routinely deny objectors' requests for time records. *In re Pall Corp. Class Action Attorneys' Fees Application*, 2013 WL 1702227, at *4 (E.D.N.Y. Apr. 8, 2013) ("Neither existing case law nor, frankly, the conduct of objectors' counsel in this case suggests that objectors' counsel should be provided with the detailed time records of counsel for the class plaintiffs"); *Tavares v. S-L Distribution Co.*, 2016 WL 1743268, at *14 n.9 (M.D. Pa. May 2, 2016) ("The district courts may rely on summaries" and "need not review actual billing records.").

Finally, in a throw-away footnote, Mr. Petri claims to need "corroborating" evidence regarding the hourly rates charged by the Gadow Tyler firm. But these rates have been approved by multiple courts in securities class actions where Gadow Tyler was involved. *See, e.g. Public Emps.' Ret. Sys. of Miss. v. Goldman Sachs Group, Inc.*, Civ. Action No. 09-cv-110-HB (S.D.N.Y.), Dkt. #150 (Browne Supp. Decl., Ex. 23) (approving fee based on Gadow Tyler rates ranging of $300 to $500 per hour, as set forth in *Goldman Sachs* Dkt. #146-2 (Browne Supp. Decl., Ex. 24)). Moreover, Gadow Tyler's modest lodestar of $153,400 is not material to any issue reasonably in dispute.

## CONCLUSION

For the foregoing reasons, Mr. Petri's Discovery Motion should be denied in its entirety.[10]

Dated: July 15, 2019

Respectfully submitted,

By: */s/ John C. Browne*
　　John C. Browne (admitted *pro hac vice*)
　　Adam H. Wierzbowski (admitted *pro hac vice*)
**BERNSTEIN LITOWITZ BERGER**
　**& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Email: johnb@blbglaw.com
Email: adam@blbglaw.com

**BERNSTEIN LITOWITZ BERGER**
　**& GROSSMANN LLP**
Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, IL 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
Email: avi@blbglaw.com

*Lead Counsel for Lead Plaintiffs*
*and the Settlement Class*

**GADOW TYLER, PLLC**
Jason M. Kirschberg
511 E Pearl St.
Jackson, MS 39201
Telephone: (601) 355-0654
Facsimile: (601) 510-9667
Email: jason@gadowtyler.com

*Counsel for Plaintiff*

---

[10] The only remaining request not addressed herein is for Lead Counsel to identify any experts that they intend to rely on in support of the fee and expense request. Lead Counsel does not currently intend to rely on any experts.

13

## CERTIFICATE OF SERVICE

      I, John C. Browne, an attorney, hereby certify that a copy of the foregoing LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO OBJECTOR MARK PETRI'S MOTION TO LIFT STAY FOR LIMITED DISCOVERY was served on counsel for all parties electronically via the CM/ECF system on July 15, 2019.

Dated: July 15, 2019          By:    */s/ John C. Browne*
                                                    John C. Browne

#1309066