IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ST. LUCIE COUNTY FIRE DISTRICT FIREFIGHTERS PENSION TRUST FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STERICYCLE, INC., et al., <br><br> Defendants. | No. 16-cv-07145 <br><br> Judge Andrea R. Wood |

**ORDER**

Plaintiffs' motion for an award of attorneys' fees and reimbursement of litigation expenses [116] is granted in part and denied in part. Specifically, the Court awards Class Counsel attorneys' fees in the amount of 25% of the settlement fund, net of litigation expenses and notice and administration costs. The Court also grants Plaintiffs' request for reimbursement of litigation expenses in the amount of $21,618.75 to Public Employees' Retirement System of Mississippi and $873.36 to Arkansas Teacher Retirement System. However, the Court denies Plaintiffs' request to reimburse Class Counsel's litigation expenses in the amount of $192,433.77, and instead finds that Class Counsel is entitled to a reimbursement of $134,812.30. Objector Mark G. Petri's motion to lift the stay on discovery [121] is denied. Enter Order Awarding Attorneys' Fees and Reimbursement of Litigation Expenses. See the accompanying Statement for details.

**STATEMENT**

Public Employees' Retirement System of Mississippi ("MissPERS") and Arkansas Teacher Retirement System ("ATRS") brought this securities class action on behalf of themselves and other shareholders in Defendant Stericycle, Inc. ("Stericycle"), alleging that Stericycle defrauded shareholders by artificially inflating its financials. (Fourth Am. Compl. at 5, Dkt. No. 84.) (The Court refers to MissPERS and ATRS collectively as "Lead Plaintiffs.") After the parties had briefed Defendants' motion to dismiss but before the Court ruled on it, the parties filed a motion for final approval of their proposed $45 million settlement. (Dkt. No. 113.) The Court approved that settlement on July 22, 2019. (Dkt. No. 139.) Now, the Court addresses the request for an award of attorneys' fees by Bernstein, Litowitz, Berger & Grossmann LLP ("Lead Counsel"), counsel for Lead Plaintiffs and Plaintiffs St. Lucie County Fire District Firefighters Pension Trust Fund and Boynton Beach Firefighters Pension Fund. (Dkt. No. 116.)

Lead Plaintiffs propose to divide the fee award among Lead Counsel and two other firms that represent Plaintiffs, Gadow Tyler, PLLC and Klausner, Kaufman, Jensen & Levinson

("KKJ&L"), based on the amount of work each firm contributed, with Lead Counsel receiving the lion's share. (Lead Pls.' Mem. of Law in Opp'n to Objector's Mot. to Lift Stay for Limited Disc. ("Mem. in Opp'n to Objector's Mot.") at 7–8, Dkt. No. 132.) (The Court refers to Lead Counsel, Gadow Tyler, PLLC, and KKJ&L collectively as "Class Counsel.") Lead Counsel moves pursuant to Federal Rule of Civil Procedure 23(h) for (i) an award of attorneys' fees in the amount of 25% of the settlement amount; (ii) reimbursement of $192,433.77 for Lead Counsel's litigation expenses; and (iii) reimbursements of $21,618.75 to MissPERS and $873.36 to ATRS for costs and expenses arising from their representation of class members. Only one class member, Mark G. Petri, has objected to Lead Counsel's motion. (Dkt. No. 120.) Petri requests that the Court lift its stay on discovery to allow limited discovery into Lead Counsel's calculation of and Lead Plaintiffs' approval of attorneys' fees. (Dkt. No. 121.)

**I.**

The Court first addresses the award of attorneys' fees. In this District, the "favored method for calculating fees in common-fund cases . . . sets the fee award as a percentage of the recovered settlement fund, plus expenses and interest." *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015). The percentage method has the advantage of aligning counsel's interests with those of the class and may be particularly suitable for common fund cases "because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). The other option for calculating attorneys' fees is the lodestar method, which is based on the number of hours the attorneys contributed to the suit multiplied by a reasonable hourly billing rate. *Gastinaeu v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). The Seventh Circuit has held that "the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court." *Florin*, 34 F.3d at 566. The Court finds the percentage method reasonable here.

To determine the appropriate percentage, courts should strive to award attorneys the market price for their legal services. *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001) ("*Synthroid I*")). In other words, courts should attempt to give counsel an amount that the parties themselves might have bargained for, taking into consideration the quality of the legal services provided and the contingent nature of the case. *Synthroid I*, 264 F.3d at 718. Courts consider factors such as the size of awards granted in other cases; the complexity, length, and expense of the litigation; and the risk of nonpayment assumed by the attorneys. *Dairy Farmers of Am.*, 80 F. Supp. 3d at 845–48 The Seventh Circuit will reverse a district court's award of attorneys' fees as an abuse of discretion only if record does not rationally support the award. *Taubenfeld*, 415 F.3d at 600.

Applying the *Synthroid I* factors to this case, Class Counsel secured a good outcome with a $45 million settlement, especially given the early stage of the litigation and the fact that Stericycle was reporting only $52 million in available cash at the time of the settlement. (John C. Browne Decl. ("Browne Decl.") ¶ 86, Dkt. No. 119.) Class Counsel also pursued the matter entirely on a contingency basis. (*Id.* ¶ 18.) And given the complexities of the case, it faced a substantial risk of nonpayment. In order to prove Defendants' liability, Class Counsel would have had to show not only that Defendants caused Plaintiffs' losses, but that Defendants did so with the intent to defraud. (*Id.* ¶¶ 77–82.) Additionally, at the time of settlement, Defendants' motion to

2

dismiss was pending. (Dkt. No. 91.) If granted, Class Counsel would not have received any compensation for their services.

Nonetheless, objector Petri contends that Lead Counsel's requested 25% award is much too high, arguing that the risks of litigation were low and the parties settled early, before the Court ruled on Defendants' motion to dismiss. (Obj. to Mot. for Att'ys' Fees ("Obj.") at 7–10, Dkt. No. 120.) Petri also asserts that Lead Counsel supports its fee request with "cherry-picked examples" of attorneys' fee awards between one-third and 40% of the settlement amount, but he fails to provide sufficient authority that a lower percentage is required. (*Id.* at 8–9.) He contends that "empirical data show the market rate for large settlements obtained prior to resolution of a motion to dismiss is 8%." (*Id.* at 8.) In support of that assertion, Petri does not attach any empirical data; instead, he provides a copy of an objector's letter from an unrelated class action in another district. (*See* Obj. Ex. I at 2, 4, Dkt. No. 120-12.) Moreover, the cases upon which Petri relies, which he claims support awarding Lead Counsel a lower fee award, actually support the reasonableness of its request for 25% of the settlement amount. *See Swift v. Direct Buy, Inc.*, Nos. 2:11–CV–401–TLS, 2:11–CV–415–TLS, 2:11–CV–417–TLS, 2:12–CV–45–TLS, 2013 WL 5770633, at *8 (N.D. Ind. Oct. 24, 2013) (awarding class counsel its requested 20% of the settlement amount after noting that percentage fell far below the standard 33% award); *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *8–9 (N.D. Ill. Oct. 10, 1995) (awarding class counsel 33 1/3% of a $4.6 million settlement).

As Lead Counsel contends, attorneys' fees of one-third to 40% of the class settlement amount are typical in this District. *See, e.g.*, *Taubenfeld*, 415 F.3d 597, at 600 (affirming attorneys' fee award to class counsel of 30% of the $7.25 million settlement fund plus expenses, based partly on data that awards of 30–39% are routine in the Northern District of Illinois). This suit is somewhat distinguishable because the $45 million settlement amount is larger than those in many of Lead Counsel's cited cases. *See, e.g.*, *id.*; *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97-cv-7694, 2001 WL 1568856, at *4–5 (N.D. Ill. Dec. 10, 2001) (awarding attorneys one-third of the $14 million settlement in a stockholder class action). The Seventh Circuit has observed that when calculating the appropriate attorneys' fees, "the market rate, as a percentage of recovery, likely falls as the stakes increase." *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003). But in this Court's view, Lead Counsel has accounted appropriately for this correlation by proposing an award of 25% rather than 30% or more. Considering the contingent nature of Class Counsel's litigation and the positive outcome reached for class members, the Court finds that attorneys' fees of 25% of the settlement amount are reasonable.

Petri suggests a $4.5 million award would be more appropriate here, since it would still overcompensate Class Counsel under the lodestar method of calculating attorneys' fees. (Obj. at 15.) Petri also disputes Lead Counsel's lodestar calculation of its proposed fee. (Obj. at 13–15.) But Lead Counsel offers its lodestar calculation only as a cross-check for its proposed percentage-based fee. (Mem. of Law in Supp. of Lead Counsel's Mot. for an Award of Att'ys' Fees and Reimbursement of Litig. Expenses at 10–11, Dkt. No. 118.) Lead Counsel is not required to provide such information or to justify its fee award based on the lodestar method. *See Dairy Farmers of Am.*, 80 F. Supp. 3d at 849 ("A district court is under no obligation to cross-check the requested fees against the lodestar." (citing *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011); *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998))). Because the

Court employs the percentage method in this case, it finds that no additional analysis or calculation based on the lodestar method is necessary.

One further point on Class Counsel's fees—its percentage does not come out of the entire settlement amount, but is determined by "the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman. v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). The Seventh Circuit explained in *Redman* that district courts must remove litigation expenses and notice and administration costs from the settlement amount before calculating the attorneys' percentage, as such costs are "part of the settlement but not part of the value received from the settlement by members of the class." *Id.* Lead Counsel agrees as to litigation expenses but argues that the Court is not required to set aside notice and administration costs because *Redman* applies only to narrow situations in which the ultimate recovery is unknown. Lead Counsel's argument lacks merit. Courts routinely apply *Redman* to remove notice and administration costs from cash settlement amounts prior to calculating the attorneys' percentage, as demonstrated even in several of the cases upon which Lead Counsel relies in asserting the opposite. *See, e.g.*, *In re Nat'l Collegiate Athletic Assoc. Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 226 (N.D. Ill. 2019); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-cv-190, 2015 WL 890566, at *9–12 (N.D. Ill. Feb. 27, 2015); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-cv-4462, 2015 WL 1399367, at *5 n.2 (N.D. Ill. Mar. 23, 2015). Thus, this Court concludes that Class Counsel is entitled to its percentage of the settlement after removing notice and administration costs. Lead Counsel estimates such costs at $900,000. (Reply in Further Supp. of Lead Counsel's Mot. at 20 n.17, Dkt. No. 134).

## II.

The Court now turns to Lead Counsel's request for reimbursement of $192,433.77 in litigation expenses, which Petri does not oppose. Lead Counsel has provided a declaration detailing the litigation-related expenses incurred in this case. (Browne Decl., Ex. 6, Dkt. No. 119-8.) The Court finds all expenses reasonable, except charges related to online research. The Seventh Circuit has held that "[w]hen a court uses the percentage-of-recovery method of calculating attorney's [sic] fees, such charges are simply subsumed in the award of attorneys' fees." *Montgomery v. Aetna Plywood*, 231 F.3d 399, 409 (7th Cir. 2000); *see also Silverman v. Motorola, Inc.*, No. 07-cv-4507, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012). Lead Counsel attributes $47,862.29 to online legal research and $9,759.18 to online factual research. (Browne Decl., Ex. 6.) Because the Court has awarded Class Counsel its fees using the percentage method, Lead Counsel may not separately recover for online research. Therefore, Lead Counsel is only entitled to a reimbursement of $134,812.30 in litigation expenses.

Lead Counsel also requests reimbursement of $21,618.75 to MissPERS and $873.36 to ATRS for their costs and expenses directly related to their representation of the class pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(4). Petri also does not object to these reimbursements. Generally, in class action suits named plaintiffs may receive a higher amount of the settlement fund to compensate their extra efforts representing the class. This practice is impermissible under the PSLRA, which requires distribution of any settlement to shareholders solely on a per share basis. 15 U.S.C. § 78u-4(a)(4). But the PSLRA does allow reimbursement of parties' reasonable costs and expenses in representing the class, including lost

4

wages. *Id.* Here, a representative of MissPERS attests that four employees dedicated a total of 77.5 hours of work to this case, and requests reimbursement of $21,618.75 based on those employees' salaries. (Decl. of Donald L. Kilgore at 5–6, Dkt. No. 119-2.) The Deputy Director of ATRS attests that he spent 12 hours on the case, totaling $873.36 based on his salary. (Decl. of Rod Graves at 5, Dkt. No. 119-3.) The Court finds that MissPERS and ATRS' requests for reimbursements of 77.5 and 12 hours, respectively, of employees' work on the case are reasonable. Additionally, it is reasonable to grant such reimbursements based on those employees' estimated salaries per hour. The Court therefore grants Lead Counsel's motion as to the reimbursements of MissPERS and ATRS' expenses.

### III.

Finally, the Court turns to Petri's motion to lift the stay on discovery. (Dkt. No. 121.) The Court previously ordered a stay in all proceedings in this case, other than those necessary to carry out the terms of the parties' settlement agreement.[1] (Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement ¶ 20, Dkt. No. 111.) Petri requests that the Court lift that stay and allow discovery regarding (i) Lead Counsel's billing methods; (ii) how Lead Plaintiffs intend to split the attorneys' fee among Class Counsel; and (iii) Lead Counsel's financial and political relationship with MissPERS. As noted above, the Court does not need to inquire into Lead Counsel's billing methods because its fee is based on a percentage of the settlement. And Lead Plaintiffs have already explained how they intend to distribute the fee award. (*See* Mem. in Opp'n to Objector's Mot. at 7–8.) Therefore, the Court addresses only Petri's request for information regarding Lead Counsel's political contributions.

If a class member opposes a Rule 23(h) motion for attorneys' fees, the court may allow discovery relevant to the class member's objections. *See* Fed. R. Civ. P. 23(h) advisory committee's note to the 2003 amendments. "In determining whether to allow discovery, the court should weigh the need for the information against the cost and delay that would attend discovery." *Id.* When class counsel's motion for attorneys' fees provides thorough information supporting its entitlement to a particular award, "the burden should be on the objector to justify discovery to obtain further information." *Id.* Here, Lead Counsel has provided comprehensive information about the work it contributed to this case and how the attorneys' fees it requests are reasonable in light of that work. Accordingly, Petri bears the burden of showing why further discovery into Lead Counsel's attorneys' fees is necessary.

In support of his motion, Petri asserts that Mississippi Attorney General Jim Hood, who manages MissPERS, regularly receives campaign contributions from Class Counsel. (Objector's Mot. to Lift Stay for Limited Disc. at 5, Dkt. No. 121.) Petri argues that this connection "partially explains why MissPERS has endorsed 25% attorneys' fees on the gross common fund" and justifies the requested discovery. (*Id.*) But Petri's argument is purely speculative. He has provided

---

[1] Defendants argue that the mandatory stay of discovery during the pendency of any motions to dismiss required by PSLRA § 78u-4(b)(3)(B) precludes the requested discovery. (Mem. in Opp'n to Objector's Mot. at 4–5.) But because the Court denied Defendants' motion to dismiss without prejudice in light of parties' settlement (*see* Dkt. No. 112), and so the motion is no longer pending.

5

no evidence of any wrongdoing or illicit understanding between Class Counsel and MissPERS. Absent such evidence, the Court finds the mere allegation that Class Counsel has made political donations to the campaigns of a figure associated with MissPERS insufficient to justify additional discovery, particularly when Lead Counsel's request for attorneys' fees is detailed and reasonable. Accordingly, the Court sees no reason to delay payouts to the class by allowing further discovery and Petri's motion is denied.

Dated: May 19, 2020

_____
Andrea R. Wood
United States District Judge