UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE<br>STERICYCLE SECURITES LITIGATION | Case No. 1:16-cv-07145<br><br>CLASS ACTION<br><br>Hon. Andrea R. Wood |
| MARK PETRI,<br><br>        Objector. | |

**OBJECTOR MARK PETRI'S UNOPPOSED MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND INCENTIVE AWARD
AND MEMORANDUM OF LAW IN SUPPORT**

## INTRODUCTION

As a direct result of Mark Petri's objection and successful appeal, the class has access to an additional gross $3,299,075. Class claimants will receive this amount, net fees, *pro rata* because class counsel and Petri agreed that plaintiffs should reduce their now-vacated 25% fee award to a request for 17.5%. The compromise provides Stericycle shareholders with more money, avoids further litigation, and speeds payment to the class.

Petri respectfully requests an award of $575,000 in attorneys' fees and an incentive award of $1,000 to compensate him for his time spent and risk in pursuing his objection. The fee request equals 17.4% of the additional class benefit created, which would not exist but for Petri bringing his objection and a successful appeal of the plaintiffs' fee award. The requested objector award compares favorably to objectors' awards in other cases and mirrors class counsel's own fee request. Attorney time efficiently spent by Petri's counsel provides a crosscheck that confirms the reasonableness of a $575,000 award, with a lower multiplier than plaintiffs are requesting, especially in view of the substantial risk of non-recovery that exists in class-action objections.

Class counsel does not oppose Petri's motion.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................. i

TABLE OF CONTENTS .................................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................................. iii

BACKGROUND .................................................................................................................................. 1

ARGUMENT ........................................................................................................................................ 4

I.      Petri is entitled to attorneys' fees for the $3.299 million improvement to gross class recovery achieved by his appeal and subsequent settlement. .......................................... 4

         A.      A total attorneys' fee of 17.5% of the benefit conferred is reasonable. ........................ 6

         B.      Petri's attorneys' lodestar is a reasonable cross-check for a $575,000 request. ............. 8

II.     Petri qualifies for a modest incentive award ................................................................ 11

CONCLUSION .................................................................................................................................. 13

Certificate of Service ........................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208-JF,
   2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) ...............................................................11

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,
   743 F.3d 243 (7th Cir. 2014) ..............................................................................................................8

*Arnett v. Bank of Am., N.A.*,
   2014 WL 5419125 (D. Or. Oct. 22, 2014) ........................................................................................7

*Blum v. Stenson*,
   465 U.S. 886 (1984) ..........................................................................................................................11

*In re Citigroup Secs. Litig.*,
   2017 WL 3842601 (S.D.N.Y. Sept. 1, 2017) ....................................................................................6

*In re Classmates.com Consol. Litig.*, No. C09-45RAJ,
   2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 12, 2012) .......................................................7, 12

*Dewey v. Volkswagen*,
   909 F. Supp. 2d 373 (D.N.J. 2012) ............................................................................................. 5-6

*Eubank v. Pella Corp.*,
   753 F.3d 718 (7th Cir. 2014) ..........................................................................................................4, 5

*Eubank v. Pella Corp.*, 2019 WL 1227832,
   2019 U.S. Dist. LEXIS 43074 (N.D. Ill. Mar. 15, 2019) ..............................................................5, 9

*Florin v. Nationsbank of Georgia, NA*,
   60 F.3d 1245 (7th Cir. 1995) ............................................................................................................10

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) .............................................................................................................4

*Grayson v. Berryhill*, No. 4:16-cv-61,
   2017 WL 6209703 (N.D. Okla. Dec. 8, 2017) ..................................................................................9

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PriceWaterhouseCoopers, L.L.P.*,
   212 F.R.D. 400 (E.D. Wis. 2002) .....................................................................................................5

*Johnson v. Lafayette Fire Fighters Ass'n Local 472*,
   51 F.3d 726 (7th Cir. 1995) ..............................................................................................................11

*Kaufman v. American Express Travel Related Servs., Co.*,
   2016 WL 806546 (N.D. Ill. Mar. 2, 2016) ................................................................................... 7-8

*Kirby v. Berryhill*, No. 14-cv-936,
    2017 WL 5891059 (N.D. Ill. Nov. 29, 2017) ...................................................................9

*Lan v. Ludrof*, No. 1:06-cv-114,
    2008 WL 763763 (W.D. Pa. Mar. 21, 2008) ...................................................................7

*Lonardo v. Travelers Indem. Co.*,
    706 F. Supp. 2d 766 (N.D. Ohio 2010) .........................................................................11

*McDonough v. Toys "R" Us, Inc.*,
    80 F. Supp. 3d 626 (E.D. Pa. 2015) ...........................................................................7, 10

*O'Rourke v. Healthdyne, Inc.*, Civ. A. Nos. 84-4295, 84-4296,
    1986 WL 923 (E.D. Pa. Jan. 16, 1986). ...........................................................................9

*Pearson v. Target Corp.*,
    968 F.3d 827 (7th Cir. 2020) .........................................................................................11

*In re Primus*,
    436 U.S. 412 (1978) .......................................................................................................11

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
    273 F. Supp. 2d 563 (D.N.J. 2003) .................................................................................7

*Reynolds v. Beneficial National Bank*,
    288 F.3d 277 (7th Cir. 2002) .....................................................................................4, 10

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ...........................................................................................5

*Rodriguez v. West Pub. Co.*,
    602 Fed. Appx. 385 (9th Cir. 2015) ..............................................................................10

*Rougvie v. Ascena Retail Group*, No. 15-cv-724,
    2019 U.S. Dist. LEXIS 28229 (E.D. Pa. Feb. 21, 2019) ................................................7

*In re Southwest Airlines Voucher Litig.*,
    898 F.3d 740 (7th Cir. 2018) ...........................................................................4, 7, 8, 10

*In re Stericycle Sec. Litig.*,
    35 F.4th 555 (7th Cir. 2022) ................................................................................. 2, 4, 11

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) .........................................................................................11

*In re Synthroid Mktg Litig.*,
    325 F.3d 974 (7th Cir. 2003) .........................................................................................10

*In re Trans Union Corp. Privacy Litigation*,
 629 F.3d 741 (7th Cir. 2011) ...........................................................................................7

*Vought v. Bank of Am.*,
 901 F. Supp. 2d 1071 (C.D. Ill. 2012) ...........................................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005) ..............................................................................................6

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
 523 F. Supp. 3d 1108 (N.D. Cal. 2021) ...........................................................................9

*White v. Auerbach*,
 500 F.2d 822 (2d Cir. 1974) ............................................................................................4


**Rules and Statutes**

Fed. R. Civ. P. 23(e)(5)(B) ........................................................................................................4


**Other Authorities**

Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*,
 2003 U. CHI. LEGAL F. 403 ...........................................................................................12

William B. Rubenstein, *The Fairness Hearing: Adversarial and Regulatory Approaches*,
 53 UCLA L. Rev. 1435 (2006) .....................................................................................10

Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*,
 74 Tul. L. Rev. 1809 (2000) ............................................................................................6

Brian Wolfman & Alan B. Morrison, *Representing the Unrepresented in Class Actions Seeking
 Monetary Relief*, 71 N.Y.U. L. REV. 439, 503 (1996) ....................................................8

## BACKGROUND

Mark Petri, as trustee for the Julia Winkler Petri 2014 Trust, created under Article III, Section (D) of the Margaret Gregory Reiter 1988 Trust, created by Agreement dated June 9, 1988, as amended July 22, 1992 ("Petri") filed an objection to Class Counsel's fee request on July 1, 2022. Dkt. 120. On the same day, Petri moved to lift the settlement stay so that he could pursue discovery from the named plaintiffs and their counsel. Dkt. 121. The Court continued hearing on the motion to the fairness hearing on July 22. Dkts. 129, 139, 140 (fairness hearing transcript).

Petri's objection argued that the 25% rate also exceeded what sophisticated client would pay. Dkt. 120 at 7-9. Other securities plaintiffs employ a "sliding scale" that reduces the fee percentage for successively larger settlement recoveries. *Id.* Represented by Hamilton Lincoln Law Institute's Center for Class Action ("CCAF"), Petri argued that the early stage of the settlement also militated in favor of a lower percentage, and suggested that the litigation partially rode the coattails of previous whistleblower and government investigations into Stericycle's rate hiking practices. *Id.* at 9. Petri also objected that plaintiffs had not disclosed the precise division of fees among all attorneys, including fees for one firm whose involvement was mentioned for the first time in a footnote on page 39 of a supporting declaration. Dkt. 121 at 7. Petri found the nondisclosure concerning in view of past "kickback"-style arrangements alleged and confirmed in other securities suits headed by the named plaintiffs here: MissPERS and ATRS. *Id.* at 10-13. Petri's proposed discovery sought retention agreements and all fee sharing agreements that might apply to the fee award. *See* Proposed Interrogatories, Dkt. 125-1 at 5-6. Petri's motion to lift the stay also recounted significant campaign contributions flowing from class counsel attorneys to MissPERS's *de facto* decisionmaker, the former attorney general of Mississippi. Dkt. 121 at 5-9. Thus, Petri sought discovery of similar political contributions from the family members of firm employees, which may not be evident from public campaign finance disclosures. Dkt. 125-1 at 6.

Class counsel opposed the motion and purported to moot Petri's request for fee sharing agreements by "voluntarily disclosing" that fees would be shared among the firms proportionally to

their belatedly-disclosed lodestar figures. Dkt. 132 at 9. In reply, Petri observed that class counsel did not deny the existence of previous fee sharing agreements. Dkt. 138 at 6. During oral argument at the Seventh Circuit, plaintiffs *still* could not deny the existence of prior fee sharing agreements. Petri argued that "while lead plaintiffs have now identified the allocation of fees among the law firms in this case, whether their initial fee request was based on that allocation or built in a cushion of fees to be shared with another party remains an outstanding question." *Id.* at 7.

The Court granted final approval of the underlying settlement on August 12, 2019. Dkt. 142. Because the sole *pro se* objector to the underlying settlement did not appeal, by the terms of the settlement it became final on September 11, 2019. Finality of defendant's release does not require the Court to award any attorneys' fees at all. *See* Settlement, Dkt. 108-1, ¶¶ 1(t), 16. The Court retained jurisdiction to decide class counsel's fee motion and Petri's motion. Dkt. 142 at 9.

On May 19, 2020, the Court denied Petri's discovery motion and overruled most of his objections to the 25% fee award, except that the Court agreed that the Seventh Circuit requires courts to award attorneys' fees *net* costs. Dkt. 149 at 4 (citing *Redman*). Petri appealed.

The Seventh Circuit meaningfully agreed with Petri and vacated the fee order. *See In re Stericycle Sec. Litig.*, 35 F.4th 555, 572 (7th Cir. 2022). The panel agreed that *ex ante* market evidence concerning negotiated PSLRA attorneys' fees—namely, the MissPERS retention agreement—support awarding an incrementally smaller percentage fee for larger tiers of class recovery. *Id.* at 562. The Seventh Circuit did not decide what the appropriate fee award should be, but it interpreted a table to the MissPERS's retention as supporting an award for "12.78 percent of the settlement" and remanded so that this Court could give this evidence "substantial weight in assessing the reasonableness of the proposed award." *Id.* at 563. The panel required consideration of the early stage of the settlement (*id.* at 567) and of the reduced risk of nonpayment implied by prior consumer and government litigation. *Id.* at 560. The panel affirmed the denial of Petri's motion to lift the discovery stay, but "we also would find no abuse of discretion if the court had decided these issues the other way or somewhere in-between." *Id.* at 567.

On remand, Petri and class counsel prepared to fully litigate class counsel's renewed fee request, requesting a briefing schedule to allow time for Petri to file a new motion to seek discovery. *See* Dkt. 170-1 (scheduling stipulation). Petri also expected to conduct expert discovery of any economist or legal fee expert plaintiffs might have retained to opine in view of the Seventh Circuit's opinion emphasizing the market rate for attorneys' fees. The Court would have heard at least two completely contested motions. Following this Court's decision on the motions, either Petri or class counsel might have appealed.

Instead, Petri reached a compromise with class counsel that will benefit former Stericycle shareholders while conserving private and judicial resources. Class Counsel agreed to limit their fee request to 17.5% of the common fund net fees. The 17.5% figure is closer to the Seventh Circuit's suggested 12.78% than the original 25% request. While Petri believes 17.5% may be excessive for a $45 million settlement resolved prior to discovery or the resolution of a motion to dismiss, he recognizes the risks and costs of continued litigation over the difference. Given those risks, the opportunity cost of continuing to litigate compared to the public-interest value of Petri's counsel turning to other matters, and the value in expeditiously paying former Stericycle shareholders, Petri and his counsel believe the compromise fair and beneficial. *See* Bednarz Decl. ¶ 8. For these reasons, Petri agreed not to object to Plaintiffs' fee request of not more than 17.5% of the net common fund.

Class counsel has advised Petri's counsel that the net common fund stands at $43,987,679.81. Thus, the class saves $3,299,075.99 gross relative to this Court's now-vacated fee award. *Id.* ¶ 14. With the common benefit to the class from Petri's objection known to be nearly $3.3 million, Petri now seeks an attorneys' fee award under Rule 23(e). Class counsel agreed that Petri could seek a reasonable award from the savings to the class, provided that he does not seek a higher percentage that class counsel. Thus, pursuant to this agreement, which Petri discloses pursuant to Rule 23(e)(3), class counsel does not oppose this motion, and Petri does not oppose class counsel's motion filed on this date. Bednarz Decl. ¶¶ 10-11 (describing terms of the agreement).

Under the terms of the settlement, class counsel's fee became payable immediately, (so was presumably paid over two years ago), but the difference between the 2020 fee award and the reduced award must be paid back into the common fund within five business days. Dkt. 108-1, ¶ 16.

## ARGUMENT

"If…objections persuade the judge to disapprove it, and as a consequence a settlement more favorable to the class is negotiated and approved, the objectors will receive a cash award that can be substantial." *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). Accordingly, objectors who provide a material benefit to the class through their objections "are entitled to an allowance as compensation for attorneys' fees and expenses" as a matter of law. *White v. Auerbach*, 500 F.2d 822, 829 (2d Cir. 1974); *see also Eubank*, 753 F.3d at 720; *In re Southwest Airlines Voucher Litig.*, 898 F.3d 740, 746 (7th Cir. 2018) (reversing denial of fees to objector who conferred benefit on the class); *Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994) (error to deny fees to objector that benefited class by successfully arguing for reduction in class counsel's fees).

Here, the objection and successful appeal of Mark Petri resulted in a benefit for claiming class members of approximately $3.3 million. Petri achieved this result by vacating the May 19, 2020 fee award, with the Seventh Circuit remanding so that this Court could reevaluate while giving "substantial weight" to *ex ante* market evidence supportive of a 12.78% fee award. *In re Stericycle Sec. Litig.*, 35 F.4th at 572. In view of this opinion, Petri and class counsel settled so that plaintiffs request no more than 17.5%, a savings of 7.5% of the net common fund, or $3,299,075.99.

Pursuant to Rule 23(e)(5)(B), Petri requests $575,000 in attorneys' fees on this pecuniary improvement, an amount equaling a modest 17.4% of the benefit to the class.

**I.  Petri is entitled to attorneys' fees for the $3.299 million improvement to gross class recovery achieved by his appeal and subsequent settlement.**

Petri is entitled to a share of the total attorneys' fees awarded in this case because he realized a substantial pecuniary benefit to the class. *Eubank v. Pella Corp.*, 753 F.3d at 720; *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (holding that objectors' "lawyers who contribute

materially to the proceeding" are entitled to a fee, even if the judge would have *sua sponte* made same finding without the objection).

The general rule governing fee awards to objectors in class action settlement proceedings holds that objectors who generate "an increase to the common fund" "or otherwise substantially benefit the class members" "may claim entitlement to fees on the same equitable principles as class counsel." *Rodriguez v. Disner*, 688 F.3d 645, 654-56 (9th Cir. 2012). When such a claim is presented, the court should consider whether the efforts of counsel for the objectors "improved the settlement, assisted the court, and/or enhanced the recovery in any discernible fashion." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PriceWaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 413 (E.D. Wis. 2002).

Petri materially enhanced the settlement through his multi-year efforts in front of this Court and the Seventh Circuit. Petri freed $3.299 million relative to class counsel's vacated fee award, and class counsel must now repay this money to the common fund. If not for Petri's objection and successful appeal of the denial of the objection, the class members would have shouldered the entire 25% fee awarded to class counsel, but now the 7.5% savings reverts to the common fund for their benefit.

Petri secured this benefit through settlement post-remand—the Seventh Circuit opinion did not dictate any particular fee award for class counsel—but this does not diminish his entitlement to fees as a prevailing objector. The procedural posture here (where an overruled objection led to a successful appeal and then a settlement on remand) resembles the one in *Eubank v. Pella Corp.* There, class members whose settlement objections were overruled found vindication on appeal at the Seventh Circuit. *See* 753 F.3d 718. On remand the parties renegotiated a settlement that substantially increased class recovery. *Eubank v. Pella Corp.*, 2019 WL 1227832, 2019 U.S. Dist. LEXIS 43074 (N.D. Ill. Mar. 15, 2019). The district court awarded fees to the objectors, finding "there can be no dispute that the objectors added value to the settlement of this case and prevented an inequitable outcome," and awarded the lead objectors' counsel $966,750, a lodestar multiplier of 6.0. 2019 U.S. Dist LEXIS 43074, at *30-*31. Similarly, in *Dewey v. Volkswagen*, the district court, the District of New Jersey correctly awarded the objector-appellants (CCAF's clients) attorneys' fees for the benefit they had

bestowed upon the class. There, the objectors had "identified a deficiency in the adequacy of the representative plaintiffs and successfully pursued their argument on appeal, such that a new settlement was negotiated that eliminated [the defect]." 909 F. Supp. 2d 373, 396 (D.N.J. 2012). Judge Shwartz, valuing the material benefit conferred at nearly $800,000, concluded that the fee award sought—10.5% of that benefit—was "well within the range of acceptable percentages-of-recovery." *Id.* As these cases show, Petri's request is well supported by precedent awarding fees to successful objectors.

### A. A total attorneys' fee of 17.5% of the benefit conferred is reasonable.

Awarding fees on a percentage of the benefit basis "directly aligns the interests of the class and its counsel" while avoiding pitfalls of the lodestar method. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (cleaned up). If objectors' fees are not attuned to the benefit conferred, then it will become more lucrative for objectors to accept settlement offers from class counsel rather than litigate large value objections in hopes of obtaining recompense for their work. While this particular incentive structure is not a deterrent to Petri's attorneys with CCAF, which is non-profit, never withdraws objections for personal gain, and does not consider the possibility of fees when deciding whether to object, CCAF obtains a good portion of its funding from attorneys' fees awarded for its successful objections and appeals. Frank Decl., Dkt. 120-2, ¶ 10; *See*, *e.g.*, *Pearson v. NBTY*, No. 1:11-cv-7972, Dkts. 286, 288 at 9 (N.D. Ill. Aug. 25, 2016); *Dewey v. Volkswagen of Am.*, No. 07-2249, 2012 U.S. Dist. LEXIS 177844, at *64 (D.N.J. Dec. 14, 2012); *In re Citigroup Secs. Litig.*, 2017 WL 3842601 (S.D.N.Y. Sept. 1, 2017). It would be unfortunate and poor public policy if *only* non-profit organizations were in a position to protect class members from class action settlement abuse. *See generally* Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809 (2000) (citing authorities that show a "broad consensus that percentage-based formulas harmonize the interests of agents and principles better than time-based formulas like the lodestar approach").

Petri seeks just 17.4% of the increase, or $575,000, which comports with his agreement with class counsel. The appropriate percentage that should be utilized for objectors is the same utilized for

class counsel. Under a normal percentage-of-benefit benchmark approach for awarding fees to objectors, Petri's attorneys could be entitled to 25% of the benefit conferred. *E.g.*, *Kaufman v. American Express Travel Related Servs., Co.*, 2016 WL 806546, at *13-*14 (N.D. Ill. Mar. 2, 2016) (awarding objector 34% of the value added); *Arnett v. Bank of Am., N.A.*, 2014 WL 5419125, at *3 (D. Or. Oct. 22, 2014) (awarding objector 25% of the benefit conferred); *Rougvie v. Ascena Retail Group*, No. 15-cv-724, 2019 U.S. Dist. LEXIS 28229, at *50 (E.D. Pa. Feb. 21, 2019) (applying 25% benchmark to benefit conferred by objectors); *Lan v. Ludrof*, No. 1:06-cv-114, 2008 WL 763763, at *28 (W.D. Pa. Mar. 21, 2008) (awarding objector 25% of the increase in benefit to the class). Petri's counsel at CCAF generally seeks modest percentages in line with percentage awards to class counsel in the same case. *See, e.g., Southwest Airlines*, 898 F.3d at 746 (calling CCAF's request "modest"); *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 662 (E.D. Pa. 2015) (awarding CCAF $742,500 in fees; *see also In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 12, 2012) (noting that the award of $100,000 "if anything" "would have undercompensated CCAF").

In the alternative, the fee may be justified by comparing the percentage of the common fund secured by each of Petri and class counsel. This means that the objector and class counsel effectively receive the same percentage from the portion of the fund each is responsible for. *In re Trans Union Corp. Privacy Litigation* found that an objector's fee award may be calculated as a percentage of the fee awarded to class counsel. 629 F.3d 741, 748 (7th Cir. 2011) (finding an objector's award "too small."). The Seventh Circuit affirmed the special master's finding that 50% of the improvement in class benefit should be credited to the objectors (and 50% of the improvement credited to MDL counsel who had negotiated the initial settlement). *Id.* at 747. The Seventh Circuit concluded that because the objector was responsible for 22% of the total benefit conferred, she was entitled to 22% of the total fee award that should have been awarded, increasing her fee award from $2.7 million to $4.125 million. *Id.* at 748; *see also Great Neck*, 212 F.R.D. at 416 (due to lack of marketplace rates for objector counsel, "I will compare the relative value of the objector's counsel's contribution to that of class counsel"); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 273 F. Supp. 2d 563, 572 (D.N.J. 2003) (awarding objector 1.4% of class counsel's fee because objector's efforts enhanced relief by 1.4%); *Kaufman*, 2016 WL

806546, at *13-*14 (N.D. Ill. Mar. 2, 2016) (awarding objector 34% of the value added to the class, nearly the same as counsel's 34.8% award). Here, $3.3 million of the pre-attorneys' fee $43.9 million common fund was secured by Petri, implying his fee award should be about 7.5% what class counsel's is, or $577,338. Petri's request exactly matches the proportion of common benefit he provided.

Given the degree of success, the degree of risk, the public policy reasons to award fees, and the efficiency of the lodestar, Petri respectfully asks the Court to approve Petri's $575,000 request as reasonable.

B. **Petri's attorneys' lodestar is a reasonable cross-check for a $575,000 request.**

While Petri's request for a fee award is based on the percentage of recovery, courts sometimes use a lodestar cross-check "a means of ensuring that the percentage award is not a windfall" to the attorneys. 5 Rubenstein § 15:88; *see generally* Brian Wolfman & Alan B. Morrison, *Representing the Unrepresented in Class Actions Seeking Monetary Relief,* 71 N.Y.U. L. REV. 439, 503 (1996) (calling the crosscheck "essential" in the context of large settlements). That said, district courts may employee either percentage or lodestar method award attorneys' fees. *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 248 (7th Cir. 2014).

Here, "[e]ither calculation shows that this is not a case where an objector ran up the with minimal value added." *Southwest,* 898 F.3d at 746. Petri's lodestar confirms instead the reasonableness of his request.

The lodestar for Petri's attorneys is shown below:

| Attorney | Hours | Rate | Sum |
|---|---|---|---|
| Melissa Holyoak | 18.5 | $825 | $15,262.50 |
| Ned Hedley | 25 | $825 | $20,625.00 |
| Anna St. John | 118.8 | $775 | $92,070.00 |
| M. Frank Bednarz | 261.7 | $700 | $183,190.00 |
| Adam Schulman | 50.3 | $675 | $33,952.50 |
| | | | $345,100.00 |

Bednarz Decl. ¶¶ 31-37.

The lodestar excludes time preparing for a fee request, and in fact all time billed since executing the term sheet with class counsel on October 6, 2022. The lodestar is conservative and CCAF does not seek expenses incurred. Finally, CCAF *understates* its lodestar because it excludes all time for CCAF founder and director of litigation Theodore H. Frank, who spent time on the case, especially in appellate briefing, preparing for and executing oral argument, and communicating with the client. In all cases the rates are *lower* than the current Laffey Matrix rates, and another court has used the Laffey Matrix rates to grant a fee award to CCAF. Bednarz Decl. ¶ 36; *In re Wells Fargo & Co. S'holder Derivative Litig.*, 523 F. Supp. 3d 1108, 1118 (N.D. Cal. 2021). If Petri sought full Laffey Matrix rates for all the hours claimed above, the lodestar would be $397,394.70. Bednarz Decl. ¶ 38.

The requested attorneys' fee of $575,000 represents a lodestar multiplier of 1.67. This modest multiplier compares well with the Court's grant of class counsel's original fee request, which had a 2.81 lodestar multiplier. Dkt. 133, ¶ 3. Petri's multiplier is also less than class counsel's multiplier for its 17.5% fee request—provided that the court counts only the time originally submitted (subsequent time spend contesting Petri's meritorious appeal should not count as a common benefit). Using the originally reported hours, class counsel's 17.5% request would be 1.96 multiplier—higher than Petri's.

In this case, CCAF's modest lodestar multiplier reflects its efficiency as a small non-profit litigating for class interests. For good reason, courts are "reluctant to rely heavily on a method for determining whether a contingency fee is reasonable that penalizes efficiency." *Kirby v. Berryhill*, No. 14-cv-936, 2017 WL 5891059, at *1 (N.D. Ill. Nov. 29, 2017); *see also Grayson v. Berryhill*, No. 4:16-cv-61, 2017 WL 6209703, at *3 (N.D. Okla. Dec. 8, 2017) ("[I]f a firm can organize its practice efficiently by using less of its lawyers' time, yet still produce high quality legal work, it should not be penalized in the fee…."). "Awarding fees based on time alone may reward inefficiency and penalize those who are efficient and expeditious…." *O'Rourke v. Healthdyne, Inc.*, Civ. A. Nos. 84-4295, 84-4296, 1986 WL 923, at *2 (E.D. Pa. Jan. 16, 1986). Efficient work that generates significant class benefit in the face of extraordinary risk justifies multiplier. *See Eubank v. Pella Corp.*, No. 06-cv-4481, 2019 U.S. Dist. LEXIS 43074, at *32 (N.D. Ill. Mar. 15, 2019) (granting multiplier of 6.0 to objector represented by CCAF attorney Theodore H. Frank in his private capacity). Petri's fee request should not be penalized due

to the efficient advocacy provided by CCAF, which almost certainly logged fewer hours advancing his objection than class counsel spent opposing it. Bednarz Decl. ¶ 41. "Lead Counsel has … devoted additional attorney time of approximately $1.8 million in lodestar to administering the settlement and litigating the post-settlement approval objection and appeal." Dkt. 175 n.2.

Under Seventh Circuit law, attorneys who take on cases on a contingent-fee basis with risk of nonpayment are entitled to a multiplier of their lodestar to compensate them for that *ex ante* risk. *E.g., In re Synthroid Mktg Litig.*, 325 F.3d 974, 978 (7th Cir. 2003); *Florin v. Nationsbank of Georgia, NA*, 60 F.3d 1245, 1248 (7th Cir. 1995) (multiplier mandated when "the lawyers had no sure source of compensation for their services."). Objection entails high risks of non-payment. *Rodriguez v. West Pub. Co.*, 602 Fed. Appx. 385, 387 (9th Cir. 2015); William B. Rubenstein, *The Fairness Hearing: Adversarial and Regulatory Approaches*, 53 UCLA L. Rev. 1435, 1448-49 (2006). No guarantee exists that a court will agree with an objector, and most appeals affirm district courts due to the discretion allowed courts on fact-bound decisions like fee awards. Often, class counsel may still challenge an objector's entitlement to fees even after an objection results in substantially improvement in direct benefit to the class. *E.g., McDonough*, 80 F. Supp. 3d at 660. Objectors cannot know in advance, when deciding whether to object, how a court would rule without the advantage of the objector's adversarial briefing or whether another class member will object on similar grounds. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002). And even when an objector succeeds, class counsel sometimes spitefully engages in scorched-earth litigation to challenge a fee request in an attempt to discourage future objectors. *E.g., Southwest Airlines*, 898 F.3d at 746 (reversing denial of $80,000 fee to CCAF where objection tripled relief to the class and the request constituted less than 5% of class counsel's fee). *Southwest Airlines* instructs that it is preferable for objectors and plaintiffs who reach a class-beneficial settlement to also "address[] objectors' fees up front as part of the comprehensive settlement negotiations." *Id.* at 744-45. Petri and plaintiffs have done so here, but there was certainly no guarantee of this when Petri filed his objection three-and-a-half years ago, his appeal two-and-a-half years ago, or even when the Seventh Circuit remanded this year.

The risk of nonpayment is particularly high for CCAF because unlike so-called professional objectors, CCAF does not and cannot agree to *quid pro quo* settlements to withdraw appeals or objections in exchange for cash payment. *See* Frank Decl., Dkt. 120-2 ¶ 10. Indeed, CCAF is the leading opponent of such "selfish objector settlements." *See Pearson v. Target Corp.*, 968 F.3d 827, 829 (7th Cir. 2020). CCAF is a 501(c)(3) non-profit public-interest law firm, which precludes CCAF attorneys from personally profiting from any fee award.[1] *Id.* CCAF attorneys have billed thousands of hours in dozens of cases where no fees were paid to CCAF, even in cases where CCAF was successful on appeal. Frank Decl., Dkt. 120-2, ¶ 19. CCAF could only receive payment if there is a court award after (1) CCAF's objection was successful and often only if: (2) a new settlement is negotiated that increases class benefit. Given the degree of success, the degree of risk, and the efficiency of the lodestar, there is ample support for a $575,000 award to CCAF.

## II. Petri qualifies for a modest incentive award.

Petri requests a $1,000 incentive award. It is appropriate to award objectors incentive awards just as class representatives receive incentive awards. *E.g., Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-17 (N.D. Ohio 2010); *In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208-JF, 2011 U.S. Dist. LEXIS 52685, at *16 (N.D. Cal. May 17, 2011). Objector incentive awards are justified for the same reason as class representative awards: "to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). An objector such as Petri, while not a named representative, filed an objection on behalf of all class members, and thus acted on behalf of the class at cost to himself. *Cf. Pearson*, 968 F.3d at 833 (objectors who pursue class-wide benefits owe a duty of good faith to the class).

---

[1] CCAF is part of the Hamilton Lincoln Law Institute ("HLLI"), which as a non-profit, is limited in the total awards of fees it may receive in any given five-year period, Rev. Proc. 92-59, 1992-2 C.B. 411. Non-profit status does not preclude it from being awarded fees on the same basis as any other counsel. Representation that is pro bono and/or by a non-profit does not preclude a request for attorneys' fees of the same size that a for-profit firm could recover. *E.g., In re Primus*, 436 U.S. 412, 429-31 (1978) (ACLU and NAACP); *Blum v. Stenson*, 465 U.S. 886, 894-95 (1984) (pro bono publico representation not grounds for reducing attorneys' fees); *Johnson v. Lafayette Fire Fighters Ass'n Local 472*, 51 F.3d 726, 732 (7th Cir. 1995) (same).

By objecting, Petri exposed himself to the risk of private investigation, harassing discovery, and public attacks. As has been the all-too-customary experience of CCAF in its 12-year history, class counsel often adopt an unwarranted "hammer and tongs" approach against objections. *In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2012 WL 3854501, at *11 (W.D. Wash. Jun. 12, 2012). Petri's counsel was subjected to a litany of false *ad hominem* accusations extensive enough that the Seventh Circuit found them remarkably "not professional and served only to emphasize the weakness of lead counsel's own arguments." *In re Stericycle Sec. Litig.*, 35 F.4th at 572. Retaliation against objectors can spill out of the courtroom. In one egregious example, plaintiffs' attorneys emailed the class with objectors' phone numbers and addresses, suggesting that class members contact objectors challenge their "motives."[2] While Petri did not personally face these hardships, these risks of coming forward exist, and Petri nevertheless bore them to the benefit of the class. Bednarz Decl. ¶ 17.

Petri also forsook personal gain to benefit the entire class. Objectors, if they are willing to selfishly sell-out the class, are able to settle their objections for substantial sums many times larger than the $1,000 incentive payment Petri seeks here. *See, e.g.*, Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 428-32. Even when *pro bono* counsel is available, class members have little incentive to object and jump through hoops and hurdles erected by the settling parties. Thus, it is no surprise that the predominating response will always be apathy. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 FJC survey that found between 42% and 64% of settlements engendered no filings by objectors).

Because Petri came forward, the class will receive $3.3 million more (over $2.7 million net) than they would have received without Petri's objection, appeal, and settlement.

---

[2] *See* Rob Capriccioso, *A Public Letter From the Cobell Lawyers Prompts Ethics and Harassment Concerns*, INDIAN COUNTRY TODAY MEDIA NETWORK (Jan. 30, 2012), available archived at: http://indiancountrytodaymedianetwork.com/2012/01/30/a-public-letter-from-the-cobell-lawyers-prompts-ethics-and-harassment-concerns-94835

## CONCLUSION

Objector Petri respectfully asks the Court to award attorneys' fees of $575,000 to his counsel and $1000 to him as an incentive award, out of the savings to the common fund as a result of his agreement with Class Counsel to reduce their fee by $3.299 million.

Dated: November 18, 2022 /s/ M. Frank Bednarz
M. Frank Bednarz, (ARDC No. 6299073)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1145 E. Hyde Park Blvd. Apt. 3A
Chicago, IL 60615
Phone: (801) 706-2690
Email: frank.bednarz@hlli.org

*Attorney for Objector Mark Petri as trustee for the*
*Julia Winkler Petri 2014 Trust, created under Article III, Section (D)*
*of the Margaret Gregory Reiter 1988 Trust, created by Agreement*
*dated June 9, 1988, as amended July 22, 1992*

**Certificate of Service**

The undersigned certifies he electronically filed the foregoing Notice of Potential Settlement via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing.

Dated: November 18, 2022

/s/ M. Frank Bednarz